**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Koby Dean BOYETT,
Defendant-Appellant.**

No. 90-2017.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1991.

Olney G. Wallis, Houston, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., Paula C. Offenhauser, Asst. U.S. Atty., Houston, Tex., Nina S. Goodman, and Robert Erickson, Attys., Crim. Appellate Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before JOHNSON, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Koby Dean Boyett was convicted of aiding and abetting the manufacture of over 100 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. On appeal Boyett challenges the exclusion of certain evidence by the district court. We affirm.[1]

---

1. Boyett also challenges the sufficiency of the evidence and the validity of the indictment. Neither claim warrants extended discussion. As to the former claim, we believe that on the evidence presented at trial a rational jury could have concluded, beyond a reasonable doubt, that Boyett was guilty of the charged offense.

*See United States v. Lowenberg,* 853 F.2d 295, 305 (5th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989). As to the latter claim, despite any error in statutory citation, the indictment gave a clear and accurate description of the crime with which Boyett was charged. The error was not one that could

## I.

In June 1989 Boyett moved to Spring, Texas to live with his cousin, Troy Jones, and Jones's girlfriend, Carrie Brown. In a matter of days Boyett discovered a methamphetamine laboratory in the attic of his cousin's duplex. Boyett claims that he never confronted Jones about his discovery. He also claims that he was ignorant of his cousin's reasons for wanting to go to a chemical supply store on the afternoon of June 27th. Agents of the Drug Enforcement Administration were conducting surveillance at Scientific Chemical Company that day when a car driven by Boyett entered the parking lot. They watched as Jones asked to purchase various chemicals known to be used in the manufacture of methamphetamine. They also saw Boyett enter the store to counsel with his cousin for a moment before Jones completed the purchase.

After leaving the chemical supply store, Jones and Boyett realized that they were being followed. Boyett made several passes through a shopping center parking lot in an attempt to shake his pursuers; and at one point he peered into a stopped car belonging to one of them. Jones and Boyett eventually returned to the duplex. That evening Jones manufactured methamphetamine in the attic laboratory. The smell was so potent that agents watching the house from the street were able to detect it. The next morning Boyett was seen nervously and repeatedly going in and out of the duplex; once, in fact, he ran into the duplex at the sight of an approaching car.

DEA agents obtained a warrant and searched the duplex later that day. In addition to discovering the attic laboratory, the agents found traces of methamphetamine and several weapons in Boyett's room. The room was located in a loft area only a few yards away from the entrance to the attic. The stench, which permeated the entire duplex, was particularly strong in this room. Agents questioned Brown and Jones on the scene concerning, among other things, the level of Boyett's involvement in the methamphetamine enterprise; both denied his participation.

## II.

### A.

Early in the trial Boyett made it known that he intended to call Jones and Brown as witnesses in his defense. The government objected to the testimony of both witnesses, anticipating that they would avoid material lines of government cross-examination by asserting Fifth Amendment protection against self-incrimination. Thus, the court held an evidentiary hearing to determine the validity and scope of the privilege covering both witnesses, ultimately ruling that neither witness should be permitted to testify. Boyett contends that this ruling was an abuse of discretion, and that it effectively deprived him of his Sixth Amendment right of compulsory process to obtain favorable testimony. We disagree.

Boyett argues that in excluding this testimony the district court subordinated his constitutional right to present a defense, *see Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), to the government's non-constitutional right to effective cross-examination. But there is more at stake here than merely the government's strategic interests: the district court was also contending with the witnesses' invocations of a constitutional privilege. When the two are in conflict, we have stated that "an accused's right to compulsory process must give way to the witness' Fifth Amendment privilege not to give testimony that would tend to incriminate him." *United States v. Khan,* 728 F.2d 676, 678 (5th Cir.1984). *See also United States v. Chagra,* 669 F.2d 241, 260 (5th Cir.), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982).

have reasonably misled the defendant to his prejudice; therefore, it is not grounds for reversal. Fed.R.Crim.P. 7(c)(3).

The district court properly investigated the legitimacy and scope of the privileges extending to Jones and Brown and in both cases deemed their pleas well-founded. *See United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir.1980). Notwithstanding Boyett's unsubstantiated assertions to the contrary, there is no evidence to indicate that either Brown or Jones were coerced in any way. Their assertions of privilege were prompted by reasonable apprehension of prosecution and encompassed matters material to Boyett's knowledge of and involvement in the methamphetamine operation. We conclude that the district court's decision to sustain privilege protection to both witnesses has substantial support in the record. And we find that the court acted well within its discretion in striking all, not merely a portion, of the testimony of these witnesses. *See United States v. Nobles*, 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975); *Lawson v. Murray*, 837 F.2d 653, 655–56 (4th Cir.), *cert. denied*, 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988).

### B.

The district court ruled the out-of-court statements of Brown and Jones inadmissible hearsay and on this basis disallowed Boyett's inquiry into the DEA agents' knowledge of such statements. Boyett offers an assortment of reasons for why these statements should have been admitted: as statements against interest; as excited utterances; or as non-hearsay to prove the government's failure to seek further exculpatory evidence. In each instance, Boyett strains ill-suited facts to the proffered exception; yet, in no instance does he demonstrate that the district court abused its discretion by excluding this evidence.

### C.

■ Finally, Boyett challenges the district court's refusal to certify his physical therapist as an expert to express the opin-

---

**2.** Boyett called this witness to impeach the testimony of the DEA agents who claimed to have seen him run. We note that while the court

---

ion that he was incapable of running or walking without a limp. District courts enjoy considerable discretion in these matters, and we will not disturb a court's ruling absent some showing of manifest error. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). We find none.[2]

AFFIRMED.

---

withheld expert certification, it allowed the physical therapist to state substantially the same opinions as a lay witness.