United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 4, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-21035

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

SAMUEL RICHARD MARES, JR.,

Defendant - Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before JOLLY, DAVIS and CLEMENT, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Samuel Richard Mares, Jr., appeals his conviction and sentence for the crime of being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). We find no merit to any of Mares' arguments challenging his conviction which we affirm.

The principal issue in this appeal is the legality of Mares' sentence following the Supreme Court's decision in <u>Booker/Fanfan</u>. <u>United States v. Booker</u>, 125 S. Ct. 738, 160 L. Ed. 2d 621, 2005

U.S. LEXIS 628 (2005). Mares raised this issue for the first time in his brief filed with us on direct appeal. We agree with the Eleventh Circuit that our review is for plain error. United States v. Rodriguez, 2005 U.S. App. LEXIS 1832, 16-17 (11th Cir. 2005). Because the defendant did not carry his burden of establishing that the error affected the outcome of the proceeding, we find no plain error and affirm the sentence.

## I.

Mares' conviction arose from an altercation that occurred outside a Houston neighborhood bar on July 1, 2002. That night, Juan and Daniel Lopez confronted Mares and his friend, Alfredo Martinez, because they suspected Mares and Martinez had attempted to burglarize Juan Lopez's truck. Mares and Martinez were each stabbed during the fight. Several witnesses testified that shots were fired from the PT Cruiser in which Mares and Martinez fled the scene.

At about 1:00 a.m. the next morning, Houston police were summoned to the apartment of Isabel Cervantez, Martinez's girlfriend. There was a blood-stained PT Cruiser in the parking lot, and an ambulance and a fire truck were already on the scene. Paramedics treated Mares and Martinez there and loaded them into separate ambulances. As Mares was being loaded into the ambulance, one of the paramedics noticed something bulky in Mares' pocket. The paramedic removed the object, a magazine clip with twenty-seven rounds of ammunition.

There was some confusion as to the identity of the suspects because one paramedic described the patient he assisted as muscular and stocky with tattoos on his arms. Mares, although muscular and stocky, has a large tattoo on his back but none on his arms. Martinez is much smaller with tattoos on his arms. Some of the paramedics later testified that they had retrieved the magazine clip from the patient with tattoos on his arms. Furthermore, Cervantez testified that she checked Mares' pockets for identification before he left with the paramedics and did not find a magazine clip. She also testified that when Mares left the apartment he was wearing boxer shorts, not pants.

At trial, the defense focused on the issue of identification. Based on this strategy, defense counsel subpoenaed Martinez to testify. Martinez's attorney indicated that Martinez intended to "take the Fifth with respect to any questions." Martinez's attorney indicated that if called to the stand, Martinez would give no information other than his name and address because any other testimony could link him to the incident outside the bar and potentially expose him to criminal liability. Mares' counsel then requested that the court instruct Martinez to take the stand and invoke his privilege question-by-question outside the presence of the jury. The court, however, declined to do so, finding that Martinez had a "legitimate concern that would entitle him to invoke his Fifth Amendment privilege."

In her opening summation, the prosecutor remarked to the jury

that Cervantez was not a credible witness and that she had a motive to lie, unlike the paramedic, who had no reason to lie about finding the magazine clip in Mares' pocket. In her rebuttal argument, she warned the jury that the "[d]efense wants you to get lost behind a file of smoke with regard to whether or not there is a tattoo on the person that was transported." She concluded by saying: "ladies and gentlemen of the jury, don't get caught up in the smoke screen. We're here to seek justice. That's the purpose here, to second [sic] justice; and it's no coincidence, it's no mistake." The jury returned a verdict of guilty.

The district court sentenced Mares to 120 months' imprisonment and three years' supervised release. We will discuss the sentence in more detail below.

## II.

We address first Mares' challenges to his conviction.

## A.

Mares argues first that the district court's refusal to allow Mares' counsel to question Martinez outside the presence of the jury and rule on Martinez's Fifth Amendment objection to each question deprived Mares of his right to present a defense. Martinez's testimony was critical to Mares' defense because Martinez was present during the altercation and when the paramedics transported both men to the hospital. Mares argues that the district court had an obligation to conduct a careful, question-by-question assessment as to whether the Fifth Amendment was properly

4

invoked as to each question, citing United States v. Melchor Moreno, 536 F.2d 1042, 1049 (5th Cir. 1976).

A district court's decision to exclude a witness's testimony based on an invocation of the witness's Fifth Amendment privilege is reviewed for an abuse of discretion. United States v. Boyett, 923 F.2d 378, 379 (5th Cir. 1991). The trial court should inquire into the legitimacy and scope of the privilege to assess the credibility of the witness's fear of self-incrimination before excluding the testimony of that witness. Id. at 380. It should also determine what the boundaries of the privilege are in relation to the testimony sought by the defendant. Id. A witness may be totally excused only if the court determines that "he could legitimately refuse to answer essentially all relevant questions." United States v. Goodwin, 625 F.2d 693, 701 (5th Cir. 1980).

In this case, the district court acted within its discretion in determining the scope of Martinez's Fifth Amendment privilege. At trial, the court stated that it was satisfied, based on the evidence already presented in the case, that Martinez had a legitimate basis for invoking his Fifth Amendment privilege to virtually all questions asked of him that would be relevant to Mares' defense.[1]  By the time Mares attempted to call Martinez to testify, the Government had already presented substantial evidence

---

[1] The court did allow Mares to call Martinez for the purpose of demonstrating the location of his tattoos as evidence that the paramedics mistakenly identified Mares as the man carrying the magazine clip.

of Martinez's involvement in activities that could have led to charges for aggravated robbery, burglary, deadly conduct, and unlawfully carrying a firearm. The evidence up to that point had shown that Martinez had burglarized Lopez's truck and had fired a gun in the direction of Lopez and others at the scene.

Furthermore, it seems clear that, given Mares' defense strategy of disputing the Government's identification of Mares as the person from whom the ammunition clip was recovered, Mares intended to demonstrate through Martinez's testimony that it was Martinez, not Mares, who possessed the magazine clip and that he was the only one who fired shots after the altercation outside the bar. The district court understandably concluded that Martinez invoked his privilege because he had a reasonable apprehension of self-incrimination as a result of his responses to essentially any questions relevant to Mares' defense.

The court was presented with sufficient evidence with which to understand the likely implications of Martinez's testimony and, thus, the scope of his privilege. The district court did not abuse its discretion in upholding Martinez's invocation of his Fifth Amendment privilege.

### B.

Mares argues next that certain comments made by the prosecutor in her closing argument amounted to prosecutorial misconduct and reversible error. In the prosecutor's closing argument, focusing on the confusion surrounding the identification of Mares by the

6

paramedics and by the Lopezes, the prosecutor said, regarding Cervantez, a witness for the defense: "[l]adies and gentlemen of the jury, she is not credible, and you can't believe here [sic]. Charles Rizzo [the paramedic] had absolutely no reason to lie to you about finding this on defendant." And later, "She's the one with the motive to lie and not Charles Rizzo and the paramedics who have absolutely no motive." Mares, although he did not object at trial, contends on appeal that these comments amounted to improper bolstering of a Government witness. Mares also points to other comments made by the prosecutor, arguing that the prosecutor improperly impugned the role of defense counsel.

Because Mares failed to make a contemporaneous objection to the prosecutor's closing remarks in the trial court, this court will review any improper remark only for plain error. United States v. Gallardo-Trapero, 185 F.3d 307, 322 (5th Cir. 1999). Even with a contemporaneous objection to an allegedly improper remark by the prosecutor, the defendant's burden of establishing that it constitutes reversible error is substantial. United States v. Virgen-Moreno, 265 F.3d 276, 290 (5th Cir. 2001). The determinative question in such an inquiry is "whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." Id. In determining whether the remarks constitute reversible error, the court should consider "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and

7

(3) the strength of the evidence supporting the conviction." United States v. Palmer, 37 F.3d 1080, 1085 (5th Cir. 1993).

The prosecutor's statements purportedly impugning the role of defense counsel were not improper. Rather, the prosecutor's statements in this case, that defense counsel "wants you [the jury] to get lost behind a file of smoke," do not rise to the level of a challenge of either the integrity or the character of the defense counsel.

In addition, even if the prosecutor's statements were improper, either individually or when considered as a whole, they were not sufficiently prejudicial to "cast serious doubt on the correctness of the jury's verdict." Virgin-Moreno, 265 F.3d at 290. Neither did they affect the substantial rights of the Defendant. The district court did remind the jury before closing arguments that attorneys' comments are not evidence and that they should base their decision solely on the evidence admitted in the case. This instruction was also repeated in the written jury charge. Furthermore, the Government presented substantial evidence of Mares' guilt. No reversible error occurred.

## C.

Finally, Mares argues that the statute of conviction in this case, 18 U.S.C. § 922(g)(1), is an unconstitutional infringement on the fundamental individual right to keep and bear arms as guaranteed by the Second Amendment. As Mares concedes, this argument is foreclosed by United States v. Darrington, 351 F.3d 632

8

(5th Cir. 2003), <u>cert. denied</u>, 158 L. Ed. 2d 994, 124 S. Ct. 2429, (2004).  Mares also argues § 922(g)(1) is unconstitutional on its face because it does not require a "substantial" effect on interstate commerce.  Again, Mares concedes that this court has rejected these arguments in several cases.  <u>See</u> <u>United States v. Daugherty</u>, 264 F.3d 513, 517 (5th Cir. 2001), <u>cert. denied</u>, 534 U.S. 1150 (2002); <u>United States v. Gresham</u>, 118 F.3d 258, 264-65 (5th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1052 (1998); <u>United States v. Kuban</u>, 94 F.3d 971, 973 (5th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1070 (1997).

## D.

For reasons set forth above, we affirm Mares' conviction.

## III.

Mares also challenges his sentence on the ground that the district court enhanced his sentence based on facts found by the judge and that under <u>Blakely</u> and <u>Booker</u>, this sentence imposed in a mandatory Guideline regime violated his Sixth Amendment right to a jury trial.  <u>Blakely v. Washington</u>, 124 S. Ct. 2531, 159 L. Ed. 2d 403, 2004 U.S. LEXIS 4573, (2004); <u>United States v. Booker</u>, 125 S. Ct. 738; 160 L. Ed. 2d 621; 2005 U.S. LEXIS 628 (2005).  Mares did not object to his sentence on this basis in the district court and raises it for the first time on direct appeal.

The district court determined that Mares' base offense level was 24.  Based on the court's finding that Mares possessed the

9

ammunition in connection with an armed robbery,[2] the court added a 4-point enhancement as authorized by U.S. Sentencing Guidelines § 2K1.2(b)(5), bringing his offense level up to 28. In light of Mares' criminal history score of IV, his sentence range under the Guidelines was 110-137 months, subject to the statutory maximum penalty of 120 months. 18 U.S.C. § 924(a)(2). The district court sentenced Mares to 120 months imprisonment and 3 years supervised release.

## A.

Because of the effect the Booker/Fanfan opinion will have on sentencing in a large number of cases in this circuit and because this is the first sentencing decision rendered by this court since the Supreme Court issued Booker/Fanfan, we think it appropriate for us to explain at the outset how we understand the Supreme Court expects sentencing will proceed under its decision in Booker/Fanfan. After circulating this opinion to all members of the court this panel has benefitted from and incorporated into the opinion many of their comments. Also, we are indeed fortunate to have the benefit of thoughtful opinions from the First, Second, Fourth, Sixth, Ninth, and Eleventh Circuits implementing the

---

[2] Mares objected to the facts set forth in the PSR supporting his involvement in the robbery while in possession of the ammunition on the basis that they did not comport with the facts proven at trial. The district court overruled the objection and found that the trial evidence established his participation in the robbery. Mares did not thereafter challenge the sufficiency of the evidence for the court's factual finding or otherwise object to the enhancement.

<u>Booker/Fanfan</u> decision.[3]

B.

The Sentencing Reform Act of 1984("SRA") and the Guidelines issued by the United States Sentencing Commission under the authority of that Act have governed federal criminal sentences since November 1, 1987. Section 3553 of the Act specifies several factors for sentencing judges to follow in determining a sentence. One of the factors is the applicable provisions of the Guidelines. Subsection 3553(b)(1) generally requires the sentencing judge to impose a sentence within the range as calculated by the Guidelines, taking into account the facts of the defendant's offense conduct and the defendant's criminal record. The sentencing judge is permitted to select a sentence above or below the Guideline range only if the judge finds circumstances "not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b)(1). The SRA also provides for the appeal of a sentence by the defendant or the government under limited circumstances. See 18 U.S.C. §§ 3742 (a) and (b). These sections also specify the grounds upon which an appellate court is permitted to review a

---

[3] See <u>United States v. Crosby</u>, ___ F.3d ____, 2005 WL 240916, 2005 U.S. App. LEXIS 1699 (2d Cir. Feb. 2, 2005); <u>United States v. Ameline</u>, ___ F.3d ____, 2005 WL 350811, 2005 U.S. App. LEXIS 2032, amended at 2005 U.S. App. LEXIS 2178 (9th Cir. Feb. 9, 2005); <u>United States v. Hughes</u>, 396 F.3d 374 (4th Cir. Jan. 24, 2005); <u>United States v. Oliver</u>, ___ F.3d ____, 2005 WL 233779, 2005 U.S. App. LEXIS 1623 (6th Cir. Feb. 2, 2005); <u>United States v. Rodriguez</u>, ___ F.3d ____, 2005 WL 272952, 2005 U.S. App. LEXIS 1832 (11th Cir. Feb. 4, 2005); <u>United States v. Antonakopoulos</u>, ____ F.3d ____, 2005 WL 407365, 2005 U.S. App. LEXIS 3015(1st Cir. Feb. 22, 2005).

11

sentence.  18 U.S.C. § 3742(e)

The Court's decision in Booker/Fanfan substantially altered the sentencing regime under the Guidelines.  In Justice Stevens' Substantive Opinion the Court ruled that

> Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

125 S.Ct. at 756.  The Court reasoned that this ruling was required for "enforcement of the Sixth Amendment's guarantee of a jury trial." Id. at 752.  The Court explained that before the Guidelines were enacted, the sentencing judge had broad discretion to select a sentence anywhere within the range between the statutory minimum and maximum sentence provided by Congress.  This system of sentencing was significantly modified by the SRA, a regime in which a legislature or a commission delegated by the legislature specifies either specific sentences or a narrow range of sentences subject to limited exceptions.

It was the mandatory aspect of this sentencing regime that the Court concluded violated the Sixth Amendment's requirement of a jury trial.

> Indeed everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the Guidelines binding on district judges . . . For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

12

Id. at 750(internal citations omitted). In Booker, the Court followed its rationale in Blakely[4] and concluded that when the sentencing judge bound by mandatory Guidelines increased the sentencing range under the Guidelines based on facts not found by the jury or admitted by the defendant, the sentence violated defendant Booker's Sixth Amendment right to a jury trial.[5]

In Justice Breyer's Remedy Opinion the Court ruled that implementation of the Substantive Opinion required that two provisions of the SRA be "severed and excised." 125 S.Ct. at 764. These deleted provisions are subsections 3553(b)(1) which makes the use of the Guidelines mandatory and § 3742(e) which sets forth standards of review on appeal.

Thus under the Remedy Opinion, the excision of subsection 3553(b)(1) converts the Guidelines from a mandatory regime to a discretionary regime. The Remedy Opinion in Booker makes it unmistakably clear, however, that the SRA, with the exception of the excised provisions, remains intact. The Court instructed that

---

[4] In Blakely, the Supreme Court held that a sentence imposed under the state of Washington's mandatory Guideline system based on facts not found by the jury or admitted by the defendant violated the defendant's Sixth Amendment right to trial by jury. Blakely v. Washington, 124 S. Ct. 2531, 2534-38, 159 L. Ed. 2d 403, 2004 U.S. LEXIS 4573 (2004).

[5] As to defendant Fanfan, the sentencing judge increased the Guideline range from 63-78 months to 188-235 months based on the judge's finding of relevant conduct which required enhancement of the sentence under the Guidelines. However, the sentencing judge concluded that Blakely precluded his use of the mandatory Guidelines to enhance the sentencing range based on judge-found facts as opposed to facts necessary to the verdict. The sentencing judge therefore imposed a sentence of 78 months, which was within the unenhanced Guideline range. Booker, 125 S.Ct. at 747.

13

"the remainder of the act functions independently". Id. at 764. The Court further explained that "§ 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." Id. at 766. The Supreme Court, having excised the mandatory provisions of the SRA, then replaced the appellate review provisions applicable to a mandatory system with "a practical standard of review already familiar to appellate courts: review for 'unreasonableness'". Id. at 765.

C.

Even in the discretionary sentencing system established by Booker/Fanfan, a sentencing court must still carefully consider the detailed statutory scheme created by the SRA and the Guidelines, which are designed to guide the judge toward a fair sentence while avoiding serious sentence disparity. Although Booker excised the mandatory duty to apply the Guidelines, the sentencing court remains under a duty pursuant to § 3553(a) to "consider" numerous factors including the following:

> (4) the kinds of sentence and the sentencing range established for–
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
> (I) issued by the Sentencing Commission . . . .
> (5) any pertinent policy statement–
> (A) issued by the Sentencing Commission . . . .

18 U.S.C. § 3553(a)(4), (5).

14

This duty to "consider" the Guidelines will ordinarily require the sentencing judge to determine the applicable Guidelines range even though the judge is not required to sentence within that range. The Guideline range should be determined in the same manner as before Booker/Fanfan. Relatedly, Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing. 125 S.Ct. at 750, 764. The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence.[6]

If the sentencing judge exercises her discretion to impose a sentence within a properly calculated Guideline range, in our reasonableness review we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines. Given the deference due the sentencing judge's discretion under the Booker/Fanfan regime, it will be rare for a reviewing court to say such a sentence is "unreasonable."

When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required. However, when the judge

---

[6]    Under U.S.S.G. § 6A1.3(b)(2004), which remains in effect, the district court is required to "resolve disputed sentencing factors . . . in accordance with Rule 32(i), Fed.R.Crim.P." The Commentary to this Guideline provides for use of the preponderance of the evidence standard.

elects to give a non-Guideline sentence,[7] she should carefully articulate the reasons she concludes that the sentence she has selected is appropriate for that defendant. These reasons should be fact specific and include, for example, aggravating or mitigating circumstances relating to personal characteristics of the defendant, his offense conduct, his criminal history, relevant conduct or other facts specific to the case at hand which led the court to conclude that the sentence imposed was fair and reasonable. Such reasons are essential to permit this court to review the sentence for reasonableness as directed by <u>Booker</u>.[8]

D.

As indicated above, <u>Booker</u> directs us to review the ultimate sentence for "reasonableness". The Remedy Opinion in <u>Booker</u> places the primary sentencing obligation squarely on the district court. If the sentencing judge follows the principles set forth above, commits no legal error in the procedure followed in arriving at the sentence, and gives appropriate reasons for her sentence, we will

---

[7]We use the term "non-Guideline" sentence to distinguish it from a Guidelines sentence which includes a sentence that has been adjusted by applying a "departure" as allowed by the Guidelines.

[8]This requirement that the district court assign reasons for its sentence is consistent with § 3553(c) which <u>Booker/Fanfan</u> left intact: "Statement of Reasons for Imposing a Sentence. The court at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence and if the sentence . .(2) . . . is outside the [Guideline] range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment . . ."

give great deference to that sentence.

E.

We now turn to Mares' claim of <u>Booker</u> error.  He argues that he was deprived of his Sixth Amendment right to a jury trial because the sentencing judge enhanced his sentence under a mandatory Guidelines system based on facts found by the judge that were neither admitted by him nor found by the jury.  Mares, however, did not object on this basis in the district court and our review is only for plain error.[9]  <u>U.S. v. Cotton</u>, 535 U.S. 625, 631-32 (2002); <u>U.S. v. Johnson</u>, 520 U.S. 461 (1997); <u>United States v. Rodriguez</u>, 2005 U.S. App. LEXIS 1832, 16-17 (11th Cir. 2005).  Our conclusion finds direct support from the Remedy Opinion in <u>Booker</u> itself where the Court stated:

> Nor do we believe that every appeal will lead to a new sentencing hearing.  That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain error" test.

---

[9]  Although the defendant in <u>Booker</u> did not raise the Sixth Amendment issue in the district court, on appeal the government did not urge that the error was not preserved and the court of appeals considered the issue as though it had been raised.  <u>United States v. Booker</u>, 375 F.3d 508, 515 (7th Cir. 2004). The Supreme Court did not disturb the standard of review used by the Seventh Circuit and remanded the case for re-sentencing. <u>Booker</u>, 125 S.Ct. at 769. In <u>Fanfan</u> the government objected to the district court's refusal to apply the enhancement and therefore preserved its argument on appeal that the court erred in refusing to apply the enhancement based on judge-found facts.  The court remanded the case, giving both parties the option to seek re-sentencing.  <u>Id.</u> Thus, if either the Sixth Amendment issue presented in <u>Booker</u> or the issue presented in <u>Fanfan</u> is preserved in the district court by an objection, we will ordinarily vacate the sentence and remand, unless we can say the error is harmless under Rule 52(a) of the Federal Rules of Criminal Procedure.

17

<u>Booker</u>, 125 S.Ct. at 769.

Federal Rule of Criminal Procedure 52(b) provides:

Plain Error.   A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.

Under this rule federal appellate courts have "a limited power to correct errors that were forfeited because [they were] not timely raised in the district court." <u>United States v. Olano</u>, 507 U.S. 725, 731 (1993). An appellate court may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2)that is plain, and (3) that affects substantial rights." <u>Cotton</u>, 535 U.S. at 631.  "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>Id.</u>

The first prong of the plain error test is satisfied in this case.  Under the mandatory Guideline system in place at the time of sentencing, Mares' sentence was enhanced based on findings made by the judge that went beyond the facts admitted by the defendant or found by the jury. The jury found that Mares, a felon, possessed ammunition.  The judge enhanced the sentence based on his finding that Mares was involved in a felony when he committed the offense. Mares has therefore established <u>Booker</u> error.

Since <u>Booker</u>, the error is also plain.  For these purposes, "plain" is synonymous with "clear" or "obvious".  <u>Olano</u>, 507 U.S.

18

at 734.  <u>Johnson v. United States</u> teaches that an error is plain even though an objection at trial was not warranted under existing law, but a superseding decision before appeal reverses that well settled law. 520 U.S. 461, 468 (1997).  It is enough that the law was settled at the time of appellate consideration to make the error "plain". <u>Id.</u>

The third prong, which requires that an error affect substantial rights, requires more detailed consideration.  The standard for determining whether an error affects substantial rights is not in dispute.  It requires a showing that the error "must have affected the outcome of the district court proceedings." <u>Olano</u>, 507 U.S. at 734.  To meet this standard the proponent of the error must demonstrate a probability "sufficient to undermine confidence in the outcome." <u>U.S. v. Dominguez Benitez</u>, 159 L. Ed. 2d 157, 124 S. Ct. 2333, 2340 (2004).  Also the Supreme Court has made it clear that the defendant rather than the government bears the burden of persuasion with respect to prejudice.  <u>Olano</u>, 507 U.S. at 734.  The Supreme Court has explained that the defendant's burden of establishing prejudice "should not be too easy." <u>Dominguez Benitez</u>, 124 S.Ct. at 2340.  Otherwise, the prejudice standard would not serve its purpose of "enforc[ing] the policies that underpin Rule 52(b) generally, to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error." <u>Id.</u>

As Judge Carnes explains in his careful opinion for the

19

Eleventh Circuit in <u>Rodriguez</u>, the Supreme Court has faithfully enforced this burden of proof and requires

> the defendant to show that the error actually did make a difference: if it is equally plausible that the error worked in favor of the defense, the defendant loses; if the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses.

<u>Rodriguez</u>, ___ F.3d ___, 2005 U.S. App. LEXIS 1832, at 24 (11th Cir. 2005). We agree with the Eleventh Circuit's reading of the Supreme Court cases.

We also agree with the Eleventh Circuit that the district court's clear or obvious error in this case (as in <u>Rodriquez</u>) was in using extra verdict enhancements to compute the defendant's sentence in a mandatory Guideline system. In other words, the error is the imposition of a sentence, which was enhanced by using judge found facts, not admitted by the defendant or found by the jury, in a mandatory Guideline system.

We now turn to an application of the principles set forth above to answer the third prong of the plain error test in Mares' case. Since the error was using extra verdict enhancements to reach a sentence under Guidelines that bind the judge, the pertinent question is whether Mares demonstrated that the sentencing judge - sentencing under an advisory scheme rather than a mandatory one -  would have reached a significantly different result.

Based on the record before us, we reach the same conclusion

20

that Judge Carnes did in answering this question in <u>Rodriguez</u>.  We do not know what the trial judge would have done had the Guidelines been advisory.  Except for the fact that the sentencing judge imposed the statutory maximum sentence of 120 months(when bottom of the Guideline range was 110 months), there is no indication in the record from the sentencing judge's remarks or otherwise that gives us any clue as to whether she would have reached a different conclusion.  Under these circumstances the defendant cannot carry his burden of demonstrating that the result would have likely been different had the judge been sentencing under the <u>Booker</u> advisory regime rather than the pre-<u>Booker</u> mandatory regime.  Because the defendant cannot carry the burden of proof he cannot satisfy the third prong of the plain error test.

We recognize that not all the circuits agree with the Eleventh Circuit approach.  Some circuits remand all cases for re-sentencing regardless of whether the <u>Booker</u> error was preserved in the trial court.[10]  The First Circuit follows an approach similar to the Eleventh Circuit and considers remand on a record specific case by case basis.[11]

The Second Circuit in its well-written opinion in <u>Crosby</u>

---

[10]  See for example - <u>United States  v. Hughes</u>, 396  F. 3d 374 (4th Cir. Jan 24, 2005); <u>United States v. Oliver</u>, ___ F. 3d ____,  2005 WL 233779, 2005 U.S. App. LEXIS 1623 (6th Cir. Feb. 2, 2005) and <u>United States v. Ameline</u>, ___ F. 3d ___,  2005 WL 350811, 2005 U.S. App. LEXIS 2032, amended at 2005 U. S. App. LEXIS 2178 (9th Cir. Feb. 10, 2005).

[11]  United States v. Antonakopoulos, ___ F. 3d ___, 2005 WL 407365, 2005 U.S. App. LEXIS 3015 (1st Cir. Feb. 22, 2005).

adopts another, slightly different approach. The Crosby court sought assistance from the district court in answering the third prong of the plain error test. It remanded the case to the district court to answer the question of whether it would have imposed a materially different sentence if the judge had been sentencing under the Booker/Fanfan advisory regime. If the district court answered this question in the affirmative, then the district court was authorized to re-sentence the defendant. This approach has some practical appeal because the remand allows the sentencing judge to give a definitive answer to the question of whether she would have given a different sentence had the Guidelines been advisory. But, we find no support for this approach in the Supreme Court plain error cases. Those cases place the obligation on the appellate courts - rather than the district courts - to determine the third prong of the plain error test. As the Eleventh Circuit observed, that approach also has the potential of producing many needless remands and appeals from those remands. We believe the Supreme Court sought to avoid these extra steps in the judicial process by requiring appellate courts to answer all prongs of the plain error test. This conclusion is consistent with the Remedy Opinion's admonition to reviewing courts to apply ordinary prudential doctrines such as plain error.

Accordingly, based on our conclusion that Mares failed to establish that his substantial rights were affected by the district court's error in sentencing, we find no plain error and affirm his

sentence.

AFFIRMED.