United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 20, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10535

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID SPENCER GEESLIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before JONES, Chief Judge, WIENER and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

The issue in this case is whether a participant in a crime can be considered a victim for purposes of U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(1)(2005)("USSG"). Under the rare circumstances presented here, we conclude he can and AFFIRM the sentence imposed by the district court.

I.

The facts in this case are fairly simple, and largely undisputed by the parties.

From about June 1986 to November 2001, Appellant David

1

Spencer Geeslin was the Chief of Police in the City of Kennendale, Texas ("the City"). In this capacity, he administered the Kennendale Police Department ("KPD"), exercising control over budgetary and personnel matters. Geeslin also oversaw the Municipal Court of Kennendale and its employees.

The City received financial assistance from the United States Department of Housing and Urban Development for the fiscal years 1996 through 2002.

In 1993, with approval from the City Council, Geeslin established a program that allowed KPD officers to earn extra money by serving warrants for which they would be reimbursed by the City. From 1993 through 1998, officers were paid $35 for each warrant served; beginning in 1999, they were paid $50. Officers seeking reimbursement would submit paysheets documenting service for review by Paula Lummus, the Municipal Court coordinator. Geeslin had the authority to authorize warrant service, and he supervised Lummus.

From the beginning of the warrant service program, Geeslin supplemented his own income by serving warrants. Other officers participated as well, including Kennendale police officer Gary Cooper. In 1996, Geeslin and Cooper began serving warrants together and splitting the proceeds. By the end of 1997, they were the only officers involved in the program.

At some point in 1997, Geeslin decided he would no longer serve the warrants with Cooper. He proposed that Cooper serve

2

the warrants on his own, but submit paysheets with both officers' names. Cooper agreed,[1] and Geeslin continued to collect half of the reimbursements. From 1997 through November 2001, Cooper submitted approximately 130 fraudulent pay sheets which collectively reflected that Geeslin earned $147,000 in fees.[2]

Beginning in 1998, Geeslin augmented his fraud scheme by ordering Lummus to alter paysheets so that he would receive additional reimbursements. From 1998 through November 2001, Lummus directed some $64,000 to Geeslin from the City in this fashion.

Geeslin pled guilty to Conspiracy to Obtain Program Funds by Fraud in violation of 18 U.S.C. § 371 and 18 U.S.C. § 666(a)(1)(A) on January 5, 2005. His presentence report ("PSR") concluded that he caused the City to sustain a loss of $64,000, resulting in a six-level increase of the offense level in

---

[1] Geeslin's factual resume, which he signed, describes the agreement so:

> When Geeslin proposed this arrangement to Cooper, Cooper readily agreed to the new arrangement. When Cooper agreed to the arrangement, Geeslin was fully aware that Geeslin was in a position of authority over Cooper and that Cooper probably agreed to the new arrangement because Cooper thought that Cooper's agreement would be in Cooper's long term best interests, both professionally and financially.

[2] Although the exact number is unclear from the record, Cooper also earned approximately the same amount of money for his recorded share of the work (in reality, of course, the entire share was Cooper's).

accordance with USSG § 2B1.1(b)(1)(D).[3]  This figure reflected the $211,000 Geeslin fraudulently earned from both the Cooper and Lummus schemes, less the fair market value of the warrant services actually provided to the City by Cooper, $147,000, in accordance with USSG § 2B1.1 cmt. n.3(E)(i).[4]  The PSR calculated an offense level of 15.

The government objected to the sentence on the theory that while the City was made whole, Geeslin also victimized Cooper for the $147,000 in reimbursements he received for work Cooper performed on his own.  It presented testimony at the sentencing hearing from Cooper that he agreed to Geeslin's plan for fear of being "black-balled" by Geeslin and losing his ability to participate in the warrant service program.  On April 18, 2005, the district court sustained the government's objection and determined that Cooper was also a victim for purposes of the Sentencing Guidelines.  It calculated the loss caused by Geeslin to be $211,000, which resulted in six additional offense levels, 21 total.  The district court sentenced Geeslin to a term of 37

---

[3] This subsection provides for a six-level increase for crimes causing losses of more than $30,000.  The following subsection, § 2B1.1(b)(1)(E), provides for an eight-level increase for crimes causing losses of more than $70,000.

[4] Comment 3(E) provides, in pertinent part: "Loss shall be reduced by . . . (i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant and other persons acting jointly with the defendant, to the victim before the offense was detected."

4

months, a special assessment of $100 and three years' supervised release.  Geeslin timely appeals the sentence.

## II.

In evaluating a sentence imposed in accordance with the Sentencing Guidelines, we review the district court's interpretation of the Guidelines *de novo* and its factual determinations for clear error.  U.S. v. Solis-Garcia, 420 F.3d 511, 513-14 (5th Cir. 2005).  We review the sentence for unreasonableness with regard to the sentencing factors enumerated in 18 U.S.C. § 3553(a), United States v. Duhon, 440 F.3d 711, 714 (5th Cir. 2006), inferring reasonableness if the district court imposes a sentence within a properly calculated Guidelines range. U.S. v. Mares, 402 F.3d 511, 519 (5th Cir. 2005).

## III.

The issue in this case is whether the district court properly considered Cooper a "victim" under section 2B1.1. Geeslin describes Cooper as a willing co-conspirator, while the government paints him as the victim of extortion.[5]  Because it considered Cooper a victim, the district court added $147,000 to its calculation of the loss caused by Geeslin, cancelling out the effect of the credit against loss for value received by the City.

---

[5] Cooper was not prosecuted in federal court.  He was prosecuted in state court however, where he agreed to plead guilty to a felony in connection with his role in the scheme in exchange for a probated sentence.

5

Under subsection 2B1.1(b), the amount of loss is a factor in determining the appropriate sentence.  The application notes define loss as the greater of the actual loss and the intended loss.  USSG § 2B1.1 cmt. n.3(A).  Actual loss, the only loss relevant here, is "the reasonably foreseeable pecuniary harm that resulted from the offense."  USSG § 2B1.1 cmt. n.3(A)(i).

The Guidelines provide for a credit against loss where the victim of the fraud receives value.  The loss amount is reduced by "[t]he money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected."  USSG § 2B1.1 cmt. n.3(E).  As there is no dispute that the City got the full value of its $147,000 because of the warrant service Cooper performed, the question is whether he is properly considered a victim.  If not, the appropriate loss amount for sentencing purposes is $64,000, the Lummus scheme money for which the City received no value.

The application notes define a victim as  "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense. 'Person' includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies."  USSG § 2B1.1 cmt. n.1. We believe this definition includes someone in Cooper's position.

Cooper's agreement to participate in Geeslin's scheme to

6

defraud the City does not preclude the district court's determination that he was a victim because it was not entirely voluntary. Geeslin was Cooper's superior and controlled access to the warrant service program. It is unclear what *new* value Cooper would receive for agreeing to Geeslin's scheme, as his participation was already accomplishing the goals of staying in his employer's good graces and receiving money. In that he received nothing new, Cooper's agreement looks less like a *quid pro quo* and more like an assent to extortion.

Geeslin argues that our opinion in United States v. Sublett compels the application of the credit against loss. 124 F.3d 693 (5th Cir. 1997). In Sublett, the defendant misrepresented his personal academic and professional qualifications in an attempt to win two counseling contracts with the IRS. Id. at 694. He pled guilty and was sentenced under section 2F1.1, the predecessor-in-part to the current section 2B1.1. The district court calculated the loss as the total value of the two contracts. Id. This Court vacated the sentence, reasoning that Sublett's firm's provision of counseling services, some of which were provided by counselors whose qualifications had not been misrepresented, should be credited against the loss amount for purposes of sentencing. Id. at 695. The analogy of Sublett to the present case is insufficient. Geeslin is analogous to Sublett, and the City to the Internal Revenue Service; but there

is no analog for Cooper.  This distinction forces the issue back to the question of whether Cooper can be considered a victim.  He can, so <u>Sublett</u> does not apply.

Given the rare circumstances in this case, the district court correctly sentenced within the Guidelines range and its sentence is entitled to a presumption of reasonableness.  <u>See</u> <u>Mares</u>, 402 F.3d at 519.

IV.

For the aforementioned reasons, we AFFIRM the sentence.