# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-51265

United States Court of Appeals
Fifth Circuit

**FILED**
January 10, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

JIMY ISAIAS SALGADO-PALMA,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:12-CR-301-4

Before JOLLY, HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Jimy Isaias Salgado-Palma was convicted by a jury of one count of aiding and abetting the importation of more than 50 but less than 100 kilograms of marijuana and one count of aiding and abetting the possession of more than 50 but less than 100 kilograms of marijuana with the intent to distribute. He was sentenced to 41 months of imprisonment and three years of non-reporting supervised release. At his trial, the district court permitted two of his three co-defendants to make a blanket invocation of their Fifth Amendment right

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-51265

against self-incrimination, while his third co-defendant was not questioned. Salgado appeals, contending the district court failed to undertake a sufficient inquiry into the applicability and scope of the privilege before permitting the blanket invocation. Without vacating Salgado's conviction, we REMAND this case and order the district court to hold a hearing analyzing the two co-defendants' invocation of the Fifth Amendment privilege for the purposes of both analyzing the scope of their invocations and determining whether the district court's prior ruling on these invocations prejudiced the defendant. Should the district court find such prejudice, it should grant Salgado a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2012, Salgado and his three co-defendants, Israel Jacinto-Garcia, Rene Olmos-Fierro, and Louis Santiago Gonzalez-Barba, were arrested along Texas Highway 67, ten miles north of Presidio. After admitting they were in the United States illegally, the four men were taken to the United States Border Patrol station in Presidio. Shortly thereafter, two Border Patrol agents and Gonzalez-Barba returned to the highway, where Gonzalez-Barba led them to a set of foot tracks ostensibly belonging to the four men. Border Patrol Agent Helio Franco followed these tracks to a stash of four backpacks containing over 220 kilograms of marijuana, which had been secreted beneath some brush. Further, Agent Franco later testified that he was able to match these footprints to the shoes of the four men in custody.

On June 14, each of the four men were indicted for one count of importing more than 50 but less than 100 kilograms of marijuana ("Count One") and for one count of possessing with intent to distribute the same amount ("Count Two"). Jacinto-Garcia pled guilty to Count One, Olmos-Fierra and Gonzalez-Barba pled guilty to Count Two, while only Salgado proceeded to trial.

2

No. 12-51265

Salgado presented a theory of duress as his defense at trial. According to his testimony, he and his three co-defendants were forced to carry the backpacks containing marijuana at gunpoint by a group of drug smugglers. He further testified that he met his co-defendants for the first time after he had been kidnaped and confined for several days in a house in Ojinaga, Mexico. Other evidence showed that at least one of his co-defendants agreed to carry the drugs so to enter the United States illegally and that another may have done so because he had lost a load of marijuana on a previous journey. It is further undisputed that Salgado traveled to Ojinaga from his native Honduras for the purpose of seeking illegal passage to the United States.

At trial, Salgado subpoenaed each of his co-defendants to testify regarding the events preceding and surrounding their journey across the border with the marijuana. At the time of Salgado's trial, all three had entered pleas as described above and were awaiting sentencing. Two of the co-defendants took the stand in turn and each answered in the affirmative questions from their individual attorneys that they intended to invoke the Fifth Amendment privilege. The district court then, without further elaboration, concluded that neither would be required to answer any other questions. Salgado moved alternatively for a continuance until after the co-defendants' sentencing or a mistrial, although he never objected to the district court's ruling on the co-defendants invocations of the Fifth Amendment. The district court denied the continuance and the mistrial.

The jury found Salgado guilty of both counts. The district court sentenced him to 41 months in prison and three years of non-reporting supervised release. On appeal, he argues only that the district court erred by permitting each of his co-defendants to invoke the Fifth Amendment as to any and all testimony without properly analyzing the applicability or scope of the privilege.

3

No. 12-51265

DISCUSSION

After a witness asserts a Fifth Amendment privilege not to testify, the trial judge should inquire "into the legitimacy and scope of the witness's assertion" of the privilege. *United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980). "A blanket refusal to testify is unacceptable." *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976). Instead, the district court should "make a particularized inquiry, deciding, in connection with each specific area that the questioning party wishes to explore, whether or not the privilege is well-founded." *Id.* In a case where the district court relied only on the witness' "bald assurance that he has a proper Fifth Amendment right" to refuse to answer any questions, we directed the district court on remand to hold a hearing on whether the witness' "fear of self-incrimination [was] well-founded" and to determine "the parameters of his Fifth Amendment rights [. . .] in the context of the testimony [the defendant] wishe[d] to obtain from him." *See United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975).

These requirements can be satisfied in different ways. We permitted a witness to invoke the Fifth Amendment and not be subject to further questioning when the district court said "it was satisfied, based on the evidence already presented in the case, that [the witness] had a legitimate basis for invoking his Fifth Amendment privilege" as to all questions. *United States v. Mares*, 402 F.3d 511, 514-15 (2005).[1] The district court had already, prior to the assertion of the privilege, been "presented with sufficient evidence with which to understand the likely implications of [the witness's] testimony and, thus, the scope of his privilege." *Id.* at 515. Consequently, the inquiry into the

---

[1] Mares was pursuing an alternative perpetrator theory. The witness was, by implication, the alternative perpetrator. We stated that the district court "understandably concluded that [the witness] invoked his privilege because he had a reasonable apprehension of self-incrimination as a result of his responses to essentially any questions relevant" to the defense's alternative perpetrator theory. *See Mares*, 402 F.3d at 515.

"legitimacy and scope" of the assertion did not require more questioning of the witness. If the district court fails to acquire the relevant information, "we look to the materiality and relevancy of the excluded testimony." *Melchor Moreno*, 536 F.2d at 1050. We concluded in *Melchor Moreno* that "the jury might have given greater credence to the [defendants'] story if [the witness's] testimony had corroborated it to some extent." *Id.*

In the present case, there was no "particularized inquiry" into the areas that the defendant wanted to explore with the allegedly privileged witnesses. There also, though, was no argument by counsel that the inquiry was needed. Generally, we review a district court's decision to excuse a witness from testifying based on the invocation of the Fifth Amendment testimonial privilege for abuse of discretion. *Mares*, 402 F.3d at 514. The government argues for plain error review because it contends that Salgado failed to preserve the issue for appeal when he did not raise the need for further inquiry when each witness asserted a Fifth Amendment testimonial privilege. Failure to preserve an issue usually results in our reviewing a district court's ruling only for plain error. *See United States v. Cotton*, 535 U.S. 625, 629 (2002). Salgado does not argue that he objected to the ruling on this basis. Salgado's motion for a continuance or mistrial because of the assertion of the privilege did not inform the district court of the procedural demands he is raising now.

We conclude that the district judge's failure to make a full inquiry into the scope of the co-defendants' invocation of the Fifth Amendment should be reviewed for plain error. We acknowledge that defense counsel in the early precedents such as *Goodwin* and *Melchor Moreno* also did not make objections based on the need for a more searching inquiry. Those decisions, though, were explaining new procedures to be followed when the privilege was asserted. Over thirty years later, with the procedures well-established, counsel must alert the district court to the requirements in order to preserve the error.

5

Here, the district court called two co-defendants to the stand, permitted each witness's attorney to question him about whether he intended to invoke the Fifth Amendment, and, upon an answer in the affirmative, determined that the witness would not be required to answer any further questions. The only explanation the district court gave was that "all three of these co-defendants pled guilty to one count, so they still have liability under the other count . . . [and] until they are sentenced, they still have their . . . Fifth Amendment right." There was no effort to explore the scope of the privilege. We held in *Mares* that a district court might have sufficient evidence from before the invocation of the privilege to demonstrate that a witness would incriminate himself as to any testimony relevant to the proceedings. *Mares*, 402 F.3d at 514-15. We do not discern similar record support for a blanket privilege here.

During the proceedings in which he called the two co-defendants, Salgado's counsel proffered that he "would have expected them to testify . . . that they did not know each other" and that when they were first arrested they "made claims that they had been forced to bring . . . the marijuana" into the United States. Such testimony could have corroborated Salgado's testimony and provided support for his theory of duress. We conclude the district court excluded material and relevant evidence after failing to make a "particularized inquiry" as to what extent that material and relevant evidence was protected by the Fifth Amendment privilege. *Melchor Moreno*, 536 F.2d at 1049.

As discussed above, Salgado did not object to the district court's ruling on the co-defendants' blanket invocations nor did he alert the district court to the proper inquiry. Such long-standing precedents as *Goodwin*, *Melchor Moreno*, and *Gomez-Rojas* provided the basis for explicit objections for failure to follow the procedural steps those cases have mapped. Counsel should have pointed these out to the district court.

No. 12-51265

We consider whether the failure to make this inquiry was plain error, meaning that "there is (1) error, (2) that is plain, and (3) that affects substantial rights." *Mares*, 402 F.3d at 520 (quotation marks omitted). If all three of those elements exist, we have "discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* Here, we find the district court committed error by not analyzing the scope of the co-defendants' invocations of the Fifth Amendment. This error was plain because our precedent clearly requires at least some measure of inquiry after a witness asserts the privilege. *See Melchor Moreno*, 536 F.2d at 1049.

The next step is to determine whether this plain error affected Salgado's substantial rights. That determination requires knowing what the witnesses would have said to a searching inquiry on the applicability and scope of the privilege. The best course is to remand the case to the district court in order to make the proper inquiry into the witnesses's claims of privilege as it existed at the time the co-defendants were first called to the stand.

We are ordering a procedure substantially the same as that followed in *Campbell v. United States*, 365 U.S. 85, 99 (1961). There, the defendant sought under the Jencks Act the production of an investigative report. *See* 18 U.S.C. § 3500. The trial judge did not follow the proper procedure for analyzing the request, depriving the defendant of the opportunity to present his defense. *Campbell*, 365 U.S. at 96-98. The Supreme Court could not identify from the record the extent of the prejudice to the defendant from the missing evidence. *Id.* at 98. Consequently, the Court remanded for a hearing without vacating the defendant's conviction. *Id.* at 99. We conclude such a procedure is the best course here. The record does not show the entire breadth of information Salgado could have elicited from his co-defendants. Further, it is unclear from the record what information he could or could not present to the jury.

7

The district court is ordered to "supplement the record with new findings" if it concludes Salgado was not prejudiced. *Id.* On the other hand, should the district court determine, after inquiring into the witness's assertion of privilege, that Salgado would have been entitled to present meaningful corroborative evidence through the witnesses and that the deprivation prejudiced Salgado's substantial right to present a defense, such prejudice would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Mares*, 402 F.3d at 520 (quotation marks omitted). If those findings are made, the district court should grant a new trial.

We close by mentioning that only Olmos-Fierro and Gonzalez-Barba took the stand to be questioned regarding their invocation of the Fifth Amendment. Co-defendant Jacinto-Garcia did not. Because Salgado did not make any effort to secure Jacinto-Garcia's invocation of the privilege before the district court, we conclude that our order to hold a hearing does not extend to Jacinto. Our opinion should not be interpreted, though, to prevent the district court from exercising its discretion to require all three former co-defendants to be questioned on their invocation of the privilege.

In summary, we conclude that the district court's failure to make any inquiry as to the applicability and scope of the Fifth Amendment privilege asserted by the co-defendant witnesses was error that was plain. To determine if there was prejudice, Salgado is entitled to an evidentiary hearing in which a proper inquiry can be made. If after such a hearing, the district court concludes Salgado was prejudiced by the earlier failure to undertake this inquiry, the district court is to grant a new trial. Otherwise, findings that there was no prejudice should be made. The original appellate record should be supplemented with all designated new materials. A briefing schedule can then be set on any new issues raised by the remand.

REMANDED.