United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 20, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-20922

UNITED STATES OF AMERICA
                              Plaintiff-Appellee,

versus

SCOTT ERIN ALLISON
                              Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Defendant Scott Erin Allison challenges the district court's imposition of a life term of supervised release following Allison's guilty plea to possession and production of child pornography. We affirm.

**I**

The unpleasant specifics of Allison's child pornography offenses provide a necessary backdrop to understanding the district court's imposition of a life term of supervised release. Although apparently beginning much earlier, Alison's predilection for young girls was first discovered in May 2003. Then, Allison's estranged wife, Kathy, tending to Allison's dogs while he was vacationing over Memorial Day weekend, found a young girl's underwear

underneath Allison's bed.  Suspicious, Kathy returned to Allison's house the next day and, with further investigation, found a tripod, a video camera, several 8mm tapes, and numerous floppy disks. Disturbed, Kathy returned again, finding a computer hard drive. Kathy turned all of these items over to law enforcement.

The evidence confirmed Kathy's suspicions.  One video showed Allison with a young girl, approximately three-and-a-half years old, whose genitals and buttocks were exposed to a hidden camera in the laundry room.  The girl's mother confirmed that the video was made at Allison's house around late November or early December 1994, as the girl was wearing the same Christmas dress that she wore in a photo with Santa Claus, published in the local newspaper twenty-six days before Christmas.

Allison made a second video of the same child approximately twelve months later.  The video showed Allison in the same laundry room spanking the girl, pulling down her pants and underwear, and exposing her genitals and buttocks to the camera.  As the girl cried out, "Mama, I want my Mama," Allison continued to spank her, all the while telling her that he "didn't" and "wouldn't" hurt her. At the close of the video, Allison placed a laundry basket in front of the camera lens.

In a third video, Allison taped a different young girl, about ten or eleven years old at the time, undressing in Allison's bedroom.  The girl informed authorities that she would go to Allison's house to go swimming at a community pool and that she

2

would change into her bathing suit in Allison's bedroom at his direction. She was recorded by a camera Allison had set up in the closet. She confirmed that Allison's secretive taping of her occurred during the summer of 1995.

The computer hard drive and floppy disks contained numerous images and videos of nude young girls in sexually suggestive poses and engaging in sexually explicit conduct. Authorities also found files on the computer indicating that Allison engaged in online communications with young girls, including the sending and receiving of child pornography.

Allison was charged in a six-count indictment with various child pornography offenses. He pled guilty to one count of production of child pornography, in violation of 18 U.S.C. § 2251(a), and to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The presentence report recommended a life term of supervised release, and the government promptly filed notice of its intention to seek upward departure. The government argued that a life term of supervised release was necessary to "insure[] the continued monitoring of the defendant, a convicted sex offender."

Allison asked the court to sentence him at the bottom of the applicable guideline range, asserting that he was remorseful and "capable of being rehabilitated." The district court disagreed, sentencing Allison to concurrent terms of imprisonment of 96 months

3

for each count.  The government argued that a life term of supervised release was appropriate:

> [Allison] has shown a consistent pattern of an unnatural sexual interest in children and acting on it.  That's the critical inquiry, Judge.  I just want you to consider that he's acted on it.  He's gone through all stages of this continuum of behavior that therapists and the experts in this field describe.  And it's a scary thing he's done to these children[.]

The district court agreed, sentencing Allison to concurrent terms of supervised release of three years (on the production charge) and life (on the possession charge).  Relevant to this appeal, the court stated:

> That's a departure, but under the circumstances of what [the prosecutor] just mentioned, the matter of scientific evidence is that this a perpetual problem, it's not something that eight years in prison will cure.  It may deter, but it's a predilection not unlike alcoholism and some other things that don't seem to respond to incentives that embezzlement and simpler crimes do respond to.

After imposing the sentence, the district court continued:

> Mr. Allison, all of the counselors in the world can't solve this problem.  And I don't care what kind of thoughts you have; you just can't act on them.  If you act on them, you are going to end up in prison or worse.  And it might be hard.  I can't conceive that it would be as hard as what you're going to do.  And you have to -- society, the lifetime of supervision is not to hold your hand; it's to watch you, because if you're determined that you're going to go out there and violate this law again, there is no way of stopping it.  But when you're caught, you can imagine what the guidelines will be on that?
>
> *   *   *
>
> And basically what's going to happen is, if you do this again after you get out, you're going to die in prison.

4

> That's the short answer.  That's got to be down pretty far even on your list of choices.

This appeal followed.  Allison only challenges the district court's imposition of a life term of supervised release.

## II

Allison concedes that he first objected to the life term of supervised release on appeal to this Court; thus, our review is only for plain error.[1]  Allison argues (1) that he lacked notice of the district court's specific ground for upward departure; (2) that the district court's written reasons for departure were insufficient; (3) that the district court's decision to depart was an abuse of discretion; and (4) that the extent of the departure was unreasonable.  We find no error.

Supervised release terms are designed to "assist individuals in their transition to community life."[2]  The term of supervised release is controlled by 18 U.S.C. § 3583.  Under § 3583(b), the maximum term of supervised release for a Class C felony is three years.  With sex offenders, Congress determined they needed additional supervision as they make the transition back to community life.  To this end, § 3583(b) is amended by § 3583(k),

---

[1]*United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Villegas*, 404 F.3d 355, 358 (5th Cir. 2005).

[2]*United States v. Johnson*, 529 U.S. 53, 59 (2000).

5

which provides that the maximum term of supervised release for various sex offenses, including violations of § 2252A, is life.[3]

The United States Sentencing Guidelines track the heightened punishment for sex offenders reflected in the statute.[4]  For a typical Class C felony, the term of supervised release is at least two years but not more than three years.[5]  With sex offenders, a life term of supervised release is recommended: The "policy statement" in § 5D1.2(c) provides that "[i]f the instant offense is a sex offense, the statutory maximum term of supervised release is recommended."[6]  The comments to § 5D1.2(c) make clear that Allison's possession offense qualifies as a "sex offense."

Reading 18 U.S.C. § 3583(k) together with the policy statement in § 5D1.2(c) indicates that the Congress and the Sentencing Commission intended to impose life terms of supervised release on sex offenders.  Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.  The legislative history of § 3583(k) states that the life term of supervised release was in response to the

---

[3]Both Allison's possession and production offenses qualify as "sex offenses" under § 3583(k).  For whatever reason--the record is unclear-- the district court imposed the life term of supervised release only on the possession charge.

[4]Allison was sentenced under the 2003 edition of the Sentencing Guidelines, so all references herein are to that edition.

[5]U.S. SENTENCING GUIDELINES § 5D1.2(a) (2003 ed.).

[6]U.S. SENTENCING GUIDELINES § 5D1.2(c) (2003 ed.).

long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison. The current length of the authorized supervision periods is not consistent with the need presented by many of these offenders for long-term and in some cases, life-long monitoring and oversight.[7]

With this background in mind, we turn to Allison's contentions on appeal.

Allison's notice argument centers on the district court's reliance on the purportedly unannounced "scientific evidence" suggesting that possession of child pornography was a "perpetual problem" that would not be "cure[d]" with a 96-month prison sentence. Federal Rule of Criminal Procedure 32(h) requires the court to provide "reasonable notice" if it intends to depart from the applicable sentencing range "on a ground not identified for departure in either the presentence report or in a party's prehearing submission."[8] Rule 32(h) is designed to avoid placing defense counsel in the position of "trying to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative."[9]

---

[7]H.R. REP. NO. 108-66, at 49-20 (2003) (conf. rep.), *reprinted in* 2003 U.S.C.C.A.N. 683, 684; *see also United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005).

[8]*See* FED. R. CRIM. PRO. 32(h); *United States v. Andrews*, 390 F.3d 840, 844-45 (5th Cir. 2004).

[9]*United States v. Milton*, 147 F.3d 414, 421 (5th Cir. 1998).

We have consistently held that the notice requirement may be satisfied by information in the PSR.[10]  Here, the PSR explicitly referenced 18 U.S.C. § 3583(k) and the "policy statement," § 5D1.2(c), in the sentencing guidelines.  Allison also received notice of the possible life term of supervised release at his rearraignment and through the government's notice of intention to seek upward departure.  Recognizing this, Allison focuses his objection on the district court's characterization of the general notion that pedophiles are typically recidivists as "scientific evidence."  He contends that there was no scientific evidence discussed in the PSR, mentioned in the government's motion for upward departure, or presented to the district court in the form of publications or expert testimony.  Essentially, Allison asks us to hold that a district court judge must quantify each sentencing decision with citation to and discussion of empirical data.

This position fundamentally misunderstands the district court judge's role in sentencing.  Especially after *United States v. Booker*, sentencing is an art, not a science.  For instance, we now only review sentences for "reasonableness."[11]  District court judges occupy a unique position in the imposition of criminal justice, such that their evaluation of a case warrants substantial

---

[10]*United States v. Davenport*, 286 F.3d 217, 219 (5th Cir. 2002); *United States v. Doucette*, 979 F.2d 1042, 1047 n.4 (5th Cir. 1992).

[11]*United States v. Booker*, 543 U.S. 220, 261-62 (2005); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

8

deference. They see many cases with different facts, giving them a perspective much different than that of an appellate court judge. Further, we are not persuaded that the district court's invocation of "science" taints the judgment-call that the court made, as it was nothing more than a shorthand reference to the general notion--reflected in the statute and the guidelines--that pedophiles are typically recidivists. In short, Allison's notice argument fails.

Allison's objection to the district court's written reasons for departure is similarly meritless. In order to permit effective appellate review of sentences,[12] a district court must state in writing its specific reasons for an upward departure from the guidelines.[13] Here, the district court provided a single reason: "Solely with respect to the term of supervised release, the Court departs pursuant to U.S.S.G. § 5D1.2(c)." The single reference to the policy statement recommending a life term of supervised release cannot be read in a vacuum,[14] as the policy statement is derived from the statutory authority in 18 U.S.C. § 3583(k) and is consistent with Congress's intention to punish possessors of child

---

[12]*United States v. Gore*, 298 F.3d 322, 325-26 (5th Cir. 2002) (providing that the goal of § 3553 is to "permit effective appellate review of sentencing").

[13]18 U.S.C. § 3553(c); *United States v. Gonzalez*, ___ F.3d ___, 2006 WL 895204, *2-*3 (5th Cir. April 7, 2006).

[14]*Cf. United States v. Saldana*, 136 Fed. Appx. 681, 681-82 (5th Cir. 2005) (finding that a single reference to § 5K2.0 of the sentencing guidelines, which is the general provision for upward departures, was insufficient to meet § 3553(c)'s requirement and remanding to the district court so that it could supplement its reasons for departure).

9

pornography with life terms of supervised release because of the high rate of recidivism.

We also conclude that the district court did not abuse its discretion in its decision to depart upward or in the extent of the departure.[15] A court does not abuse its discretion in deciding to depart upward when its reasons for doing so advance the objectives in 18 U.S.C. § 3553(a)(2), are authorized by § 3553(b), and are justified by the facts of the case.[16] Here, inherent in the district court's reference to the policy statement is a reflection on the seriousness of the offense and the need to provide a just punishment--both permissible considerations under 18 U.S.C. § 3553(a)(2). Further, the district court's stated reason--the general notion that pedophiles are typically recidivists--is consistent with protecting the public from further crimes by the defendant, and we must be mindful of the admitted-to facts illustrating Allison's lengthy involvement in various child pornography offenses. Lastly, both the decision to departure upward and the extent of the departure are consistent with Congress's and the Sentencing Commission's intention to punish

---

[15]*See Gonzalez*, ___ F.3d at ___, 2006 WL 895204, \*3; *United States v. Saldana*, 427 F.3d 298, 308 (5th Cir. 2005); *United States v. Simkanin*, 420 F.3d 397, 415 (5th Cir. 2005); *United States v. Smith*, 417 F.3d 483, 492 (5th Cir. 2005); *United States v. Moore*, 997 F.2d 30, 37 (5th Cir. 1993) (describing that discretion as "wide").

[16]*See Gonzalez*, ___ F.3d at ___, 2006 WL 895204, \*3; *Saldana*, 427 F.3d at 310.

10

child sex offenders with life terms of supervised release.  We see no abuse of discretion.

## III

Accordingly, the district court's imposition of a life term of supervised release is AFFIRMED.