United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 5, 2006**

Charles R. Fulbruge III
Clerk

REVISED JULY 5, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 05-20427

———————————

UNITED STATES OF AMERICA

        Plaintiff - Appellant

v.

HORACIO ARMENDARIZ

        Defendant - Appellee

———————————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————————————————————————

Before KING, BARKSDALE and DENNIS, Circuit Judges.

KING, Circuit Judge:

The government appeals the five-year prison sentence of Horacio Armendariz, who pleaded guilty to the offense of use of the Internet to attempt to entice a minor between twelve and fifteen years of age to engage in sexual activity that would constitute an Aggravated Sexual Assault crime under TEX. PENAL CODE ANN. § 22.021, in violation of 18 U.S.C. § 2422(b). Specifically, the government argues that the district court's failure to impose supervised release was unreasonable. For the following reasons, we VACATE Armendariz's sentence and REMAND to the district court for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Offense

On November 7, 2004, thirty-eight-year-old defendant-appellee Horacio Armendariz visited the Yahoo "Lil Boys for Older Men" Internet chat room and began an online conversation with a person whom he believed to be a thirteen-year-old boy named Toby. "Toby" was in fact a female undercover law enforcement officer pretending to be an underage boy. Following their initial interaction, Armendariz contacted Toby via the Internet on November 8, 9, 10, 11, 15, 16, 17, and 18. During these online chats, Armendariz described sexual encounters that he would like to have with Toby, expressing his desire to teach Toby how to "do it in a bed," perform oral and anal sex on him, and take a shower with him. He also told Toby that he would teach him how to perform oral sex and how to do other things of a sexual nature. Armendariz and Toby also exchanged phone numbers, and on November 10, Armendariz called Toby on the telephone, still believing that the officer who spoke with him was a thirteen-year-old boy. During that conversation, Armendariz told Toby that he would like to meet him in person for sex, but acknowledged that it was illegal for him to "go out" with someone who was underage. In subsequent Internet conversations with Toby, Armendariz admitted that he had masturbated after they had talked on the phone, and began planning to travel from Marshall, Texas, to Houston, Texas,

for the purpose of having a sexual encounter with the boy.

Although Armendariz had originally planned to travel to Houston to meet Toby on November 12, Armendariz had to cancel because of his work schedule. They agreed to meet instead on Friday, November 19, when Armendariz said that he could take the entire weekend off of work to spend with Toby. Armendariz booked a Houston hotel room for that weekend in advance and encouraged Toby to fabricate a story to explain his whereabouts to his mother. They arranged to meet that Friday at 3:30 p.m. in a parking lot near Toby's school where Armendariz said that he would be waiting for him in a red car.

On November 19, 2004, Houston law enforcement officials arrested Armendariz in the parking lot where he and the undercover officer posing as Toby had agreed to meet. Armendariz admitted that he knew that Toby was thirteen years old and that, even though he knew it was wrong, he had traveled to Houston to meet Toby because he was lonely. Armendariz also admitted that he believed that Toby was expecting to have sex with him that weekend, but Armendariz denied that he was expecting the same. However, when the police performed a consent search of Armendariz's single-bed hotel room, they found a pack of condoms, lubricant, and two enemas.

Law enforcement officials also searched Armendariz's computer and found that he had corresponded with at least four to five other males ranging in age from sixteen to twenty-three, but

-3-

found no evidence that he attempted to have, or succeeded in having, sex with a minor other than Toby. The officers found no child pornography on Armendariz's computer or in his possession. Prior to this arrest, Armendariz had a steady history of gainful employment and had no convictions or criminal history of any kind.

On December 13, 2004, a federal grand jury indicted Armendariz on one count of use of the Internet to attempt to entice a minor between twelve and fifteen years of age to engage in sexual activity that would constitute an Aggravated Sexual Assault crime under TEX. PENAL CODE ANN. § 22.021, in violation of 18 U.S.C. § 2422(b). On January 10, 2005, Armendariz pleaded guilty to the indictment without a plea agreement.

## B. The Sentencing

A conviction under 18 U.S.C. § 2422(b) carries with it a sixty-month mandatory minimum prison sentence, which applies even in situations where the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") indicate that a shorter prison term might be appropriate. See id. Although 18 U.S.C. § 2422(b) does not prescribe a statutory minimum term of supervised release, 18 U.S.C. § 3583(b) and (k) provides that the penalty for the offense, a crime involving a minor victim, may include supervised release for "any term of years or life." Further, § 5D1.1(a) of the Guidelines states that "[t]he court shall order

-4-

a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute."[1]  Under the Guidelines, the applicable range of supervised release for a Class B felony is three to five years and, if the felony is a sex offense, may be up to life.[2] See U.S.S.G. § 5D1.2(a)(1), (b)(2).

In the Presentence Investigation Report ("PSR"), the probation officer scored Armendariz's offense at base offense level 24, recommending a two-level upward adjustment under U.S.S.G. § 2G1.3(b)(2)(B) for unduly influencing a minor to engage in prohibited sexual conduct and an additional two-level increase for the use of a computer or Internet-access device. The probation officer also recommended a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), for a total offense level of 25.  Given Armendariz's lack of criminal history (i.e., a Criminal History Category of I), the resulting applicable sentencing range, taking into account the

---

[1]  All references to specific Guidelines provisions are to the 2004 version of the UNITED STATES SENTENCING GUIDELINES MANUAL, which applied in this case because it was in effect at the time of the offense.

[2]  A conviction under 18 U.S.C. § 2422(b) is a Class B felony because it provides for a thirty-year maximum term of imprisonment.  See 18 U.S.C. § 3559(a)(2) (classifying an offense for which the term of imprisonment is twenty-five years or more as a Class B felony).

sixty-month mandatory minimum, was sixty to seventy-one months.[3] Based on this calculation and on the sentencing factors enumerated in 18 U.S.C. § 3553(a), the probation officer recommended a sentence of sixty months imprisonment. The probation officer also recommended five years of supervised release to follow Armendariz's sixty-month term of imprisonment "to assist the defendant through directive and referral counseling services in gaining employment and reintegrating back into the community." Neither the government nor Armendariz lodged any objection to the recommendations contained in the PSR.

The district court conducted a sentencing hearing on April 11, 2005. At the hearing, the government acknowledged that "a sentence at the low-end of the guideline would be appropriate for Mr. Armendariz, given the facts in this situation, his lack of criminal history, no pornography was found on his computer that was at his home in East Texas." 2 R. 5. Armendariz's attorney further requested "the lowest supervised release you can also give him. He's going to have to register as a sex offender and deal with all that in the State systems wherever he goes, and just the additional supervised release is gratuitous, it seems." 2 R. 6. The court then engaged in a colloquy with Armendariz, emphasizing the importance of professional counseling to combat

_____

[3] Absent the statutory mandatory minimum, the recommended sentencing range under the Guidelines Sentencing Table would have been fifty-seven to seventy-one months. See U.S.S.G. § 5A.

the recidivist tendencies of pedophiles:

> [T]his crime appears, from our current understanding, to
> have a substantial either physiological or certainly
> psychological component, and it has an extraordinarily
> high rate of repeat offense.  If for a moment we just
> describe it as a compulsion . . . that in no way of
> course excuses it any more than if Charlie Manson's
> compulsion with chopping people into small bits at
> parties excuses his.  But because you're going to have a
> long opportunity to exercise your freedom in the future
> . . . this is an area of behavior where counseling can
> help.  And I don't know that it can cure the inclination
> or the interest . . . but somebody you can trust and talk
> to about your feelings, even though you are successfully
> repressing them, may make it easier never to act on them
> again.  And that's the goal here. . . . [T]his is not
> something that you commit, suffer some punishment, and
> then everything goes back to the way it was before if you
> were just a felon.  There are all of those complicated
> regulatory things.  And while I don't necessarily agree
> with everything done in the name of our children, there
> are good reasons to have continual supervision for
> pedophiles.  There are statistically good reasons.  That
> doesn't mean they necessarily apply in your case.  This
> could have been completely aberrational and be no risk of
> your repeating, but public policy is made on averages and
> the average pedophile is a repeat offender.  So in
> addition to what is compelled by the States by way of
> registration and disclosure, you need to think very hard
> about professional assistance.

2 R. 7-8.  In response, Armendariz agreed to seek counseling upon
his release from prison.  The district court then sentenced
Armendariz to sixty months imprisonment and a $100 special
assessment, with zero years of supervised release.  The court
explained that it declined to impose supervised release "because
the statutory minimum [prison sentence] in this case is more than
sufficient for all of the penological purposes of criminal law,
and there will be the secondary effects because of the nature of
the crime," presumably referring to state sex-offender

registration requirements.  2 R. 10.

The government objected in open court to the lack of supervised release, asserting that state sex-offender registration alone was not an adequate substitute for the mandatory counseling and monitoring that would be required under the federal supervised release program.  Noting the advisory nature of the Guidelines after the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the court then cited additional reasons for its decision to "impose a sentence that is slightly distinct from what [the Guidelines] otherwise would have suggested," emphasizing its disagreement with the mandatory minimum prison sentence required under 18 U.S.C. § 2422(b):

> [T]he United States Probation Office is not the only resource.  There are State, County, City programs and there are the State registration and monitoring stuff and it seems to me . . . it's redundant and in absence of a statutory minimum, this offense probably should bear a short prison time and a long period of supervised release, if I were making the policy, which I'm not.  So he gets the five years [of imprisonment].

2 R. 11.

The district court entered its final judgment on April 15, 2005.  On May 10, 2005, the government timely filed a protective notice of appeal under 18 U.S.C. § 3742(b) and FED. R. APP. P. 4(b)(1)(B)(i) to challenge the lack of supervised release in the

district court's sentence.[4]

## II. STANDARD OF REVIEW

In Booker, the Supreme Court struck down the mandatory Guidelines regime, holding that the mandatory aspect of the Guidelines sentencing scheme violated a defendant's Sixth Amendment right to a jury trial. Booker, 543 U.S. at 233-34; see United States v. Mares, 402 F.3d 511, 518 (5th Cir. 2005). Although the Guidelines are now advisory rather than mandatory, under Booker, a district court still must calculate the sentencing range under the Guidelines as a starting point and consider it as one of many factors when selecting an appropriate sentence. Booker, 543 U.S. at 260; Mares, 402 F.3d at 518. Even post-Booker, we review the district court's interpretation and application of the Guidelines de novo. United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005). We will accept findings of fact made in connection with sentencing unless

---

[4] Before prosecuting the appeal of a sentence, the government must obtain approval from the Attorney General, the Solicitor General, or a deputy solicitor general. See 18 U.S.C. § 3742(b) ("The Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General."). To this end, the government has submitted a memorandum approving this appeal, signed by the Solicitor General and dated October 12, 2005. Although the Solicitor General did not authorize this appeal until more than five months after the government timely filed its notice of appeal on May 10, 2005, the government has fully complied with the § 3742(b) requirements. See United States v. Inv. Enters., Inc., 10 F.3d 263, 272 n.21 (5th Cir. 1993) (authorizing a government appeal under § 3742(b) even when the Solicitor General authorizes the appeal after the notice of appeal was filed).

clearly erroneous.  United States v. Creech, 408 F.3d 264, 270 n.2 (5th Cir. 2005).

The Court in Booker directed appellate courts ultimately to review all sentences for "unreasonableness."  Booker, 543 U.S. at 261; see United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006); United States v. Duhon, 440 F.3d 711, 714 (5th Cir 2006).  "Both a district court's post-Booker sentencing discretion and the reasonableness inquiry on appeal must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)."  Smith, 440 F.3d at 706 (citing Booker, 543 U.S. at 261).  The § 3553(a) factors include:

> (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)   the need for the sentence imposed--
>     (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B)   to afford adequate deterrence to criminal conduct;
>     (C)   to protect the public from further crimes of the defendant; and
>     (D)   to provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner;
> (3)   the kinds of sentences available;
> (4)   the kinds of sentence and the sentencing range established for--
>     (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
> (5)   any pertinent policy statement . . .;
> (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . .

18 U.S.C. § 3553(a) (2000); see Smith, 440 F.3d at 706.

-10-

Where, as here, a district court imposes a post-Booker non-Guidelines sentence--that is, one that deviates either above or below the relevant Guidelines sentence as opposed to departing with reference to an applicable Guidelines departure provision--we conduct our reasonableness review through an abuse-of-discretion lens, paying particular attention to the specific reasons given for deviating from the Guidelines.[5] United States v. Reinhart, 442 F.3d 857, 862 (5th Cir. 2006) (reasoning that "if reasonableness review requires an abuse of discretion standard for guideline sentences, the same should follow for non-guideline sentences"); see also Mares, 402 F.3d at 519 n.7 (distinguishing a "non-Guidelines" sentence "from a Guidelines sentence which includes a sentence that has been adjusted by applying a 'departure' as allowed by the Guidelines"). We have made clear that a district court imposing a non-Guidelines sentence "must more thoroughly articulate its reasons" than when it imposes a sentence authorized by the Guidelines. Smith, 440 F.3d at 707; Duhon, 440 F.3d at 715. Not only should these reasons be "fact specific" to the case at hand, but they should also be consistent with the totality of the relevant factors

---

[5] As in Smith, 440 F.3d at 708 n.3, we treat the sentence in this case as a non-Guidelines sentence. Because the district court made reference neither to departing from the Guidelines nor to the departure provisions of the Guidelines--indeed, as discussed more fully below, it hardly made reference to the Guidelines at all--"we do not examine whether [a] . . . departure . . . was available under the Guidelines." Id.

-11-

enumerated in § 3553(a). <u>Smith</u>, 440 F.3d at 707. Although "[t]he court need not make 'a checklist recitation of the section 3553(a) factors[,]' . . . 'the farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be.'" <u>Duhon</u>, 440 F.3d at 715 (quoting <u>Smith</u>, 440 F.3d at 707 (internal quotation marks and citation omitted)). A non-Guidelines sentence unreasonably fails to reflect the totality of the relevant § 3553(a) sentencing factors, and is therefore an abuse of discretion, if it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." <u>Smith</u>, 440 F.3d at 708 (citing <u>United States v. Haack</u>, 403 F.3d 997, 1004 (8th Cir. 2005)); <u>see also</u> <u>Duhon</u>, 440 F.3d at 715.

### III. DISCUSSION

The sentencing colloquy reflects that, in imposing the sentence at issue, the district court took into account Armendariz's history and characteristics, specifically his lack of a criminal record and his steady employment history, consistent with § 3553(a)(1). Although such considerations in some cases might sufficiently support a sentence that does not include supervised release, given the facts and the nature of the crime in this case, the district court's failure to impose

supervised release was unreasonable because it fails to account for the totality of the relevant § 3553(a) factors. See Duhon, 440 F.3d at 715 (explaining that "[u]nder § 3553(a) . . . a sentence must be supported by the totality of the relevant statutory factors"); see also Reinhart, 442 F.3d at 864 (assessing "the district court's justification in light of all the § 3553(a) factors").

Specifically, the sentence does not adequately account for the following factors which should have received significant weight: (1) the properly calculated sentence under the advisory Guidelines and the pertinent policy statement in U.S.S.G. § 5D1.2(b), see 18 U.S.C. § 3553(a)(4)(A), (5); and (2) the need for the sentence to afford adequate deterrence, to protect the public from the defendant, and to provide the defendant with needed correctional treatment. See id. § 3553(a)(2)(B)-(D).

## A. Applicable Sentencing Guidelines Range and Pertinent Policy Statement

As an initial matter, the district court did not adequately consider the recommended Guidelines sentencing range as a factor in imposing Armendariz's sentence. See 18 U.S.C. § 3553(a)(4) (listing the Guidelines "sentencing range" as a factor to be considered in sentencing); see also Booker, 543 U.S. at 260 (noting that district courts are required "to take account of the Guidelines together with other sentencing goals" under § 3553(a)); Mares, 402 F.3d at 519.  Although the probation

officer correctly calculated the Guidelines sentencing range in the PSR as sixty to seventy-one months imprisonment and a three-year to life term of supervised release, it is unclear from the sentencing transcript how much weight, if any, the district court placed on the Guidelines range. Indeed, the district court did not even mention the Guidelines or any provision thereof until after it had announced Armendariz's sentence and the government objected to the lack of supervised release. Only then did it note that it had, "after considering the Guidelines and their advisory capacity, elected to impose a sentence that is slightly distinct from what they otherwise would have suggested." 2 R. 13. It did not, however, give a fact-specific explanation for its decision to deviate significantly from the Guidelines range with respect to the term of supervised release; rather, the court merely imposed the mandatory minimum prison sentence without reference to the Guidelines.

Additionally, in imposing zero years of supervised release, the district court ignored the pertinent policy statement contained in U.S.S.G. § 5D1.2(b)(2). See 18 U.S.C. § 3553(a)(5) (listing "any pertinent policy statement" issued by the Sentencing Commission as a factor to be considered in sentencing). Although U.S.S.G. § 5D1.2(a)(1) notes that the length of a term of supervised release imposed for a Class B felony shall be "at least three years but not more than five years," § 5D1.2(b)(2) specifies that "the length of the term of

-14-

supervised release shall be not less than the minimum term of years specified for the offense under subdivision[] (a)(1) . . . and may be up to life, if the offense is . . . a sex offense." The policy statement that follows subsection (b)(2) further suggests that "[i]f the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended."  The statutory maximum in Armendariz's case is a life term of supervised release.  See 18 U.S.C. § 3583(b), (k); see also United States v. Allison, 447 F.3d 402, 407 (5th Cir. 2006) (noting that "the policy statement recommending a life term of supervised release cannot be read in a vacuum, as the policy statement is derived from the statutory authority in 18 U.S.C. § 3583(k) and is consistent with Congress's intention to punish [sex offenders] with life terms of supervised release because of the high rate of recidivism"). Similar to its treatment of the Guidelines sentencing range, the district court did not refer to or even acknowledge this policy statement when it sentenced Armendariz without imposing a term of supervised release.

Although "[d]eparture from the guidelines range . . . cannot alone support a finding of unreasonableness after Booker," Reinhart, 442 F.3d at 864, the district court's failure to consider the Guidelines as a starting point for a reasonable sentence is inconsistent with Booker's directive to "take account" of the Guidelines as one of many factors in an advisory-

-15-

Guidelines sentencing regime.  See Booker, 543 U.S. at 260; see also Smith, 440 F.3d at 707 (noting that, even under an advisory regime, the Guidelines range must be a "frame of reference" for a non-Guidelines sentence); Duhon, 440 F.3d at 716 (holding that the district court's miscalculation of the applicable Guidelines range "deprives the sentence of 'great deference' and is a factor to be considered in assessing the reasonableness of a sentence"). Particularly because "the farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be," the district court's failure to articulate fact-specific reasons with reference to the Guidelines for its substantial deviation from both the Guidelines sentencing range and the § 5D1.2(b)(2) policy statement militates against a holding that the sentence was reasonable.  Smith, 440 F.3d at 707 (internal quotation marks and citation omitted); Duhon, 440 F.3d at 717 (noting that, in determining the reasonableness of a non-Guidelines sentence, the district "court's failure to take into account the Sentencing Guidelines is significant").

**B.    Need for Sentence to Afford Deterrence, Protect the Public, and Provide Correctional Treatment**

In addition to the failure of the district court's sentence to account for the Guidelines, the lack of supervised release does not effectuate the statutory goals enumerated in 18 U.S.C.

§ 3553(a)(2)(B)-(D): the need to deter criminal conduct, protect the public, and provide correctional treatment to the offender. The district court addressed these considerations at length during the sentencing hearing, describing the "statistically good reasons" for continual supervision of pedophiles because of the high rate of recidivism associated with child sex crimes. The district court also repeatedly emphasized the need for Armendariz to seek professional counseling after his release from prison to address the "psychological component" of pedophilia and to help prevent him from offending again. After articulating these concerns, the district court announced that "supervised release is not being imposed because the statutory minimum is more than sufficient for all of the penological purposes of criminal law," later noting that "in absence of a statutory minimum, this offense should probably bear a short prison time and a long period of supervised release, if I were making the policy, which I'm not." 2 R. 10, 11. The district court also indicated that the state sex-offender registration requirement was a sufficient substitute for a term of supervised release. While the district court correctly identified and was aware of the appropriate relevant sentencing factors under § 3553(a)(2)(B)-(D), the sentence that it imposed--five years imprisonment and no supervised release--does not reflect these considerations.

Specifically, without federal supervised release, the sentence provides no mechanism to ensure that Armendariz will

-17-

receive the supervision he needs upon his release from prison to prevent the urge to recidivate and to address the psychological component of the crime that the district court described.  Under the federal supervised release program, offenders must comply with the mandatory reporting and notification provisions set forth in 18 U.S.C. § 3563(a).  Moreover, the district court would have the authority to order Armendariz, as conditions of his release, to undergo counseling, submit to travel restrictions, report monthly to a probation officer, and permit a probation officer to visit his home.  18 U.S.C. § 3563(b)(9), (14)-(17).

Furthermore, imposing some term of federal supervised release in this case would be consistent with the intent of Congress, as evidenced in 18 U.S.C. § 3583(k), which provides that the authorized term of supervised release for a sex offense involving a minor victim is "any term of years to life."  The legislative history of § 3583(k) reveals that the enactment of this statute providing a longer term of supervised release for sex offenders was in response to the same concerns regarding the offender's potential for recidivism and need for counseling that the district court voiced in Armendariz's case:

> This section responds to the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.  The current length of the authorized supervision periods is not consistent with the need presented by many of these

-18-

offenders      for      long-term--and      in      some      cases,
life-long-monitoring and oversight.

H.R. REP. NO. 108-66, at 49-50 (2003) (Conf. Rep.), <u>reprinted in</u>

2003 U.S.C.C.A.N. 683, 684; <u>see also</u> <u>Allison</u>, 447 F.3d at 405-06;

<u>United States v. Moriarty</u>, 429 F.3d 1012, 1025 (11th Cir. 2005).

In light of these well-founded concerns expressed both by the

district court in this case and by Congress, the district court's

decision not to impose supervised release because, in its

estimation, the mandatory minimum prison sentence served "all of

the penological purposes of criminal law" was unreasonable.  As

the Supreme Court has recognized, "[t]he objectives of supervised

release would be unfulfilled if excess prison time were to offset

and reduce terms of supervised release.  Congress intended

supervised release to assist individuals in their transition to

community life.  Supervised release fulfills rehabilitative ends,

distinct from those served by incarceration."  <u>United States v.</u>

<u>Johnson</u>, 529 U.S. 53, 59 (2000) (citing S. REP. NO. 98-225, at 124

(1983)).

Likewise, the district court's belief that the state sex-

offender registration requirement was a sufficient substitute for

federal supervised release was unreasonable.  In contrast with

federal supervised release, the Texas sex-offender registration

requirement does not provide rehabilitative resources, intensive

monitoring, or publicly funded postconfinement assistance.

Rather, sex offenders subject to the state registration

-19-

requirement merely need to provide their name and current address to state authorities. See TEX. CODE CRIM. PROC. ANN. arts. 62.051(a),(d), 62.055(a) (West Supp. 2005)); see also Lutz v. Texas, 184 S.W.3d 366, 367 (Tex. App.--Austin 2006) ("The [Texas] sex offender registration program requires a person having a reportable conviction to register with his local law enforcement authority, periodically verify his registration, and report any change of address."). This registration requirement is not an adequate substitute for the counseling and monitoring that can be mandated under federal supervised release, particularly in light of the heightened concern in sex offense cases with an offender's potential for recidivism.[6]

Especially in the case of a sex crime--and particularly for one involving a child--the need for deterrence, protecting the public, and providing the offender with necessary correctional treatment are highly relevant factors that should have been

---

[6] During the sentencing hearing, Armendariz agreed to seek counseling on his own after his term of imprisonment; however, the sentence that the district court imposed does not require him to do so. Although he had a history of gainful employment, there is no guarantee that Armendariz will return to a steady job and have the means to obtain counseling after he is released from prison. It is precisely this type of offender that supervised release was designed to rehabilitate. See S. REP. NO. 98-225, at 124 (1983) ("[T]he primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.").

-20-

effectuated in the sentence that the district court imposed. Because the sentence in this case fails to reflect any of these statutory goals, and because the district court substantially deviated from the advisory Guidelines range without articulating valid, fact-specific reasons for doing so, the sentence is unreasonable insofar as it lacks a term of supervised release. See Duhon, 440 F.3d at 721 (holding that a sentence was unreasonable where "the totality of the statutory sentencing factors fails to reasonably support the court's sentence"); Smith, 440 F.3d at 708 (noting that a sentence is unreasonable when it "does not account for a factor that should have received significant weight").

## IV. CONCLUSION

Because the district court abused its discretion by imposing an unreasonable sentence, we VACATE the sentence and REMAND to the district court for resentencing consistent with this opinion.