# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 20, 2007**

Charles R. Fulbruge III
Clerk

No. 06-40968

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

OSCAR SANCHEZ-RAMIREZ
also known as Omar Ramirez-Rodriguez

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:

Oscar Sanchez-Ramirez ("Sanchez") appeals his post-Booker, non-Guideline sentence as unreasonable. We AFFIRM.

### I.

Sanchez was charged by indictment with one count of conspiring to transport illegal aliens and five counts of aiding and abetting in the transportation of the illegal aliens. He pleaded guilty to all counts without the benefit of a plea agreement.

The presentence report ("PSR") described the offense as follows. On the morning of August 16, 2005, a dehydrated Evelyn Yesenia Alfaro-Contreras

("Alfaro") advised a ranch hand near Sarita, Texas, that a juvenile boy had died and that she and the boy had been left behind by a large number of illegal aliens. Immigration authorities discovered the body of a 13-year-old boy, identified as E.E., who had died of heat stroke. Twenty illegal aliens including Sanchez were apprehended. One alien, a diabetic with heart problems, had not taken her medicine for two days, and she had to be sent by ambulance to a hospital for treatment.

Four material witnesses stated to immigration officials that they had paid a smuggling fee, and they identified Sanchez and an individual known as "El Tio" as the guides. They stated that Sanchez was taking orders from El Tio and that he was verbally abusive to all the aliens and physically abusive to those who could not keep up. The aliens reported that El Tio shared his food and water only with Sanchez and that they refused to share with the other aliens. At least one alien stated that Sanchez had participated in the decision to leave E.E. and Alfaro behind. Sanchez originally stated that he too was going to pay to be transported into the United States, but he later admitted that he did not have the money and therefore was providing his assistance to El Tio in lieu of paying the smuggling fee. Furthermore, according to Sanchez's counsel's statements at rearraignment, Sanchez was training to become an alien smuggler like El Tio.

The PSR assessed a base offense level of 26: a base of 12, a three-level enhancement for the number of aliens, a three-level enhancement for reckless endangerment, and an eight-level enhancement because an alien died. The PSR further imposed a two-level vulnerable-victim enhancement. Following a three-level reduction for acceptance of responsibility, the total offense level was 25. This, combined with Sanchez's criminal history category of I, resulted in an advisory Guideline range of 57-71 months. The PSR suggested that an upward departure might be warranted based on the number of aliens that were placed

at a substantial risk of death or serious bodily injury or based on a finding that Sanchez's conduct "was unusually heinous, cruel, brutal, or degrading to the victim."

At sentencing, the district court lowered the Guideline range to 46-57 months after sustaining a defense objection to the vulnerable-victim enhancement. Nevertheless, the district court noted: "These people were treated cruelly and unbelievable [sic]. And I think they're vulnerable people, though they might not be considered so in the guidelines." After hearing arguments from the parties, the district court deviated upward to impose a non-Guideline[1] sentence of 80 months in prison, a five-year term of supervised release, a special assessment, and restitution.

Sanchez filed a timely notice of appeal. On appeal, Sanchez argues that his sentence is unreasonable.

II.

We review the district court's application of the Sentencing Guidelines de novo. United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006). We will not overturn factual findings relevant to sentencing unless they are clearly erroneous. United States v. Creech, 408 F.3d 264, 270 n.2 (5th Cir. 2005).

Post-Booker,[2] we review a sentence for "unreasonableness." Smith, 440 F.3d at 706 (quoting United States v. Booker, 543 U.S. 220, 261 (2005) (alteration omitted)). Our reasonableness inquiry is guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a). Id.[3] When a district court

---

[1] The district court indicated in its statement of reasons that it was imposing a sentence "outside the advisory sentencing guideline system."

[2] United States v. Booker, 543 U.S. 220 (2005).

[3] Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

imposes a non-Guideline sentence, "we conduct our reasonableness review through an abuse-of-discretion lens, paying particular attention to the specific reasons given for deviating from the Guidelines." United States v. Armendariz, 451 F.3d 352, 358 (5th Cir. 2006). "The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be." Smith, 440 F.3d at 707 (internal quotation marks and citation omitted).

"A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." Id. at 708. We have held that a factor already accounted for in the advisory Guideline range is an improper factor to consider for a non-Guideline sentence. United States v. Walters, 490 F.3d 371, 374 (5th Cir. 2007), revised, No. 05-51634 (5th Cir. Aug. 10, 2007); United States v. Perrin, 478 F.3d 672, 678 (5th Cir. 2007); United States v. Goldsmith, 192 F. App'x 261, 267 (5th Cir. 2006) (unpublished). The purpose of such a rule must be to avoid double-counting; otherwise, restricting the sentence and the sentencing judge

---

(2) the need for the sentence imposed-
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; ...
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; ....

18 U.S.C. § 3553(a) (2006).

renders the Guidelines mandatory, which violates the constitutional holding of Booker. See 543 U.S. at 245.

Sanchez argues that the district court relied on improper factors when it deviated upwards from the Guideline range to impose a non-Guideline sentence. According to Sanchez, the district court deviated upwards due to the number of aliens that Sanchez recklessly endangered, the death that occurred, and the vulnerability of the victims. Sanchez contends that all of these factors are already accounted for by the Sentencing Guidelines and are therefore improper factors.

Here, the district court deviated from the advisory Guideline range of 46-57 months and sentenced Sanchez to 80 months in prison, based on the nature and circumstances of the offense, the history and characteristics of Sanchez, and the need to impose a sentence that reflected the seriousness of the offense. See 18 U.S.C. § 3553(a).[4] In imposing a non-Guideline sentence, the district court did not double-count based on factors already considered by the advisory Guidelines range; instead, the district court deviated upwards because it felt that the facts in this case were more egregious than the normal alien-smuggling case. Cf. United States v. Rajwani, 476 F.3d 243, 250 (5th Cir. 2007), modified on other grounds, 479 F.3d 904 (5th Cir. 2007) (departure permitted because aspects of victims' vulnerability were not factored into the Guideline range). The

---

[4] The district court did not err, as Sanchez contends, by failing to consider § 3553(a)(6), which requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As he did before the district court, Sanchez emphasizes that another district court did not upwardly depart in a different case with substantially similar facts. See United States v. Garcia-Guerrero, 313 F.3d 892, 897 (5th Cir. 2002) (for financial gain, defendant led aliens in the middle of summer with inadequate supplies, and one alien died of probable heat stroke). Citing one case in which a lower sentence was imposed clearly cannot establish an unwarranted disparity under 18 U.S.C. § 3553(a)(6).

district court found that the facts were "heinous"[5] and that the defendant's actions were "like torturing these people and leaving them to die" while refusing to share food and water.[6] The district court acknowledged that the Guidelines imposed an enhancement for reckless endangerment, but noted that Sanchez's actions had helped to place over twenty people in serious danger. Furthermore, while the Guidelines imposed an enhancement for the death of E.E., the district court found the facts surrounding his death extraordinary. The district court simply did not believe Sanchez's contention that he had not known that E.E. was dying. In fact, the district court found that Sanchez had "slapped" E.E. and called him names despite E.E.'s obvious illness. Additionally, because Sanchez's motivation had been to learn the alien smuggling business, the district court concluded that Sanchez had failed to help the aliens because of concern about his new job and the money he hoped to make. Finally, the district court did not double-count the vulnerable victim enhancement, given that it rejected the enhancement when it calculated the Guideline range.

Based on these characteristics of Sanchez and on the egregious circumstances of the offense, we conclude that the sentence is not unreasonable, and accordingly, the district court did not abuse its discretion either in its decision to deviate upwards or in the degree of its deviation. See Armendariz, 451 F.3d at 358.

---

[5] Sanchez argues that his conduct was not "unusually heinous, cruel, brutal, or degrading to the victim" to meet the standard for extreme conduct under U.S.S.G. § 5K2.8. His argument is meritless because the district court did not depart based on § 5K2.8.

[6] Sanchez contends that the district court erred when it considered evidence showing that Sanchez had refused to share food and water with the aliens. Sanchez asserts that the district court misstated his ability to share food and water and to use the cell phone to seek help, but he presented no evidence to the district court in support of his allegations. In the absence of evidence to the contrary, the district court was entitled to rely on the facts stated in the PSR. See United States v. De Jesus-Batres, 410 F.3d 154, 164 (5th Cir. 2005), cert. denied, 126 S. Ct. 1020 (2006). Therefore, the district court's findings were not clearly erroneous. See id.; Creech, 408 F.3d at 270 n.2.

III.

For the foregoing reasons, Sanchez's sentence is

AFFIRMED.