IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 26, 2007**

Charles R. Fulbruge III
Clerk

No. 06-20532

UNITED STATES

Plaintiff-Appellee

v.

FRANCIS A. FUNES

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:05-CR-460-ALL

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Francis Funes appeals his sentence for using a passport that was secured by means of a false statement, in violation of 18 U.S.C. § 1542. For the following reasons, we affirm.

## I. FACTS AND PROCEEDINGS

A. The charged conduct and plea

On March 1, 2005, Francis Funes was charged in a two-count indictment with (1) using a passport that had been secured by his false statements, in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

violation of 18 U.S.C. § 1542; and (2) using a passport issued for the use of another, in violation of 18 U.S.C. § 1544. Funes pleaded guilty to the first count, without a plea agreement, on March 3, 2006. The government moved to dismiss the second count, and the district court granted the motion.

At his rearraignment, Funes admitted to the following factual basis. Funes, a citizen of El Salvador, was stopped by Houston police officers on a Texas warrant for sexual assault of a child. Funes presented a Honduran driver's license and a Honduran passport, both of which indicated that he was Rudi Renan Amador Martinez, to the police officers. Funes was also in possession of a Honduran General Consulate card, a Bank of America VISA card, a Sam's Club card, and a Tool Club card, all of which were issued in the name of Rudi Renan Amador Martinez. Honduran immigration authorities later reported that the passport was issued to Funes by the Honduran Consulate in Houston on the basis of Funes's false claim that he was a Honduran citizen named Rudi Renan Amador Martinez. Interviews with Martinez's family members revealed that the photo on the passport Funes used was not a photo of their relative. Funes obtained the passport by pretending to be Martinez. The court accepted Funes's guilty plea and ordered that a pre-sentence report ("PSR") be prepared.

B. The pre-sentence hearing

On May 26, 2006, which was to be the date of Funes's sentencing hearing, the district court announced that it intended to make an upward departure from the guidelines and offered the parties additional time to prepare. Funes asked for additional time and asked the district court "if there [were] specific issues that [he] should be prepared to respond to." The district court refused to specifically detail how it intended to depart but stated that it would look at Funes's history and characteristics; his criminal history, as indicated by the PSR, particularly "uncharged offenses"; the circumstances surrounding his

commission of the offense, in particular Funes's immigration status; and the fact that Funes "had other materials on him at the time . . . all the markings of identity theft for other purposes well beyond just the offense of the conviction." The district court specifically indicated its concern that "the advisory guidelines are inadequate to reflect the purposes set forth in [18 U.S.C. §] 3553(a)(2)."

C.    The PSR

The probation office included a number of facts about Funes that did not affect its guideline calculation in the PSR.  Though the PSR assigned Funes zero criminal history points, putting him in category I, it noted two incidents that did not lead to a conviction.   In 2002, a woman contacted the Houston Police Department ("HPD") to report that her 14-year-old daughter had been having consensual sex with Funes, who was then 22.   The victim reported that she ran away from home and stayed at Funes's apartment for eight days.  The victim admitted that she had intercourse with Funes on five occasions during that time, and that he told her not to tell anyone.  Upon an investigation that revealed "sufficient indicia of reliability," Funes was charged with the equivalent of statutory rape, a strict liability crime.  The case was ultimately dismissed in 2006, but only at the request of the victim, who had turned eighteen.

Further, when another former girlfriend of Funes's was arrested for shoplifting, she told officers of the HPD that Funes "was deeply involved in an elaborate theft ring and had recruited her."  Funes was never charged with any offense related to this report.

At the time Funes was arrested, "HPD officers had uncorroborated information about Funes having ties to the Mara Salvatrucha (MS-13) gang and he was wanted for questioning in connection with an aggravated robbery."  No further information about Funes's alleged membership in MS-13 appears in the PSR.

Funes received temporary protected status ("TPS") when he arrived in the United States on January 14, 2002, and he received two extensions of this status, which expired on March 9, 2005. A detainer has been filed against Funes by Immigration and Customs Enforcement officials.

Funes's financial condition, as described in the PSR, was as follows. Funes reported that he had been employed as an apartment repairman by a management company, IMT, since 2000. He allegedly earned $450 per week for this work, though the probation office was unable to verify the existence of the company. Funes also claimed sporadic work as a laborer and that he occasionally bought and sold cars at auction. Despite his limited income, Funes reported that he had a checking account with a balance of $7,000 and a savings account with a balance of $3,000. He also stated that he owned two vehicles, debt-free, with a combined value of $22,000. A credit report revealed no open or active accounts in his name.

After subtracting two levels for acceptance of responsibility, with a total offense level of 6 and a criminal history category of I, the guideline range for imprisonment would be 0 to 6 months.[**] Prior to the sentencing hearing, neither party indicated that there were any grounds for departure.

D.    The upward departure

The government moved for an upward departure from the sentencing guidelines. The government urged the district court to upwardly depart because (1) a criminal history category of I did not adequately reflect the seriousness of Funes's criminal activities and the likelihood that he would commit further crimes; and (2) the history and characteristics of Funes, as well as the circumstances of the offense, indicated that a longer sentence was necessary to prevent further crimes. Funes argued in response that no reliable information

---

[**] Funes acknowledged his responsibility in a signed statement to the probation office, which admitted that he "went to the Honduran Consulate with false license."

indicated that his criminal history was substantially underrepresented and that any alleged conduct was not serious enough to justify an upward departure.

At sentencing, the district court announced that the aggravating circumstances surrounding Funes's offense removed it from the heartland of similar offenses addressed by U.S.S.G. § 2L2.2, meriting an upward departure. Specifically, the district court found "from a preponderance of the evidence . . . that [Funes] committed additional crimes for which he was not charged and did not proceed to trial." It also found that a criminal history category of I "significantly underrepresents the seriousness of the defendant's criminal history and the likelihood that he will commit future crimes." The district court noted that Funes had an outstanding warrant for sexual assault of a child at the time he was arrested and that he attempted to conceal his identity from police when he was stopped. These factors justified a four-level upward departure pursuant to U.S.S.G. § 5K2.0. The court then added eight levels of departure because it found that the additional forms of false identification Funes possessed at the time he was arrested "constitute[d] uncharged criminal conduct, namely, identity fraud, and, it appears, bank fraud."

The district court found that the charge of sexual assault of a child, which was ultimately dismissed, as well as Funes's use of multiple aliases, the allegation that he was involved in a "theft ring," his unverified employment history, and the substantial assets he owned despite a reportedly meager income, combined with his illegal status in the United States and the risk that he might return to the United States following deportation, indicated that his criminal history category should be III instead of I. The criminal history category of III, combined with his enhanced offense level of 18, yielded a guideline range of 33 to 41 months. The district court sentenced Funes to 36 months of imprisonment and stated that even if its application of the guidelines

were in error, it would have found that a variance from the guidelines was warranted to accomplish the purposes of 18 U.S.C. § 3553(a).

## II. STANDARD OF REVIEW

All post-Booker sentences are ultimately reviewed for reasonableness. United States v. Smith, 440 F.3d 704, 706 (5th Cir. 2006). Following Booker, three different types of sentences are possible under the sentencing guidelines: (1) a sentence within a properly calculated guideline range; (2) a sentence that includes a departure allowed under the guidelines; and (3) a non-guidelines sentence that is either higher or lower than the relevant guideline sentence. Id. at 706–07. The last sentencing option is also known as a variance from the guidelines. United States v. Mejia-Huerta, 480 F.3d 713, 723 (5th Cir. 2007). Before imposing a variance, "the sentencing court must calculate the correct Guidelines range, consider it as advisory, and use it as a frame of reference." Id. at 721.

"Both a district court's post- Booker sentencing discretion and the reasonableness inquiry on appeal must be guided by the sentencing considerations set forth in 18 U.S.C. § 3553(a)." Smith, 440 F.3d at 706.

> [T]he district court must more thoroughly articulate its reasons when it imposes a non-Guideline sentence than when it imposes a sentence under authority of the Sentencing Guidelines. These reasons should be fact-specific and consistent with the sentencing factors enumerated in section 3553(a). The farther a sentence varies from the applicable Guideline sentence, the more compelling the justification based on factors in section 3553(a) must be. The court, however, need not engage in robotic incantations that each statutory factor has been considered. . . . The purpose of the district court's statement of reasons is to enable the reviewing court to determine whether, as a matter of substance, the sentencing factors in section 3553(a) support the sentence. . . . A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it (1) does not account for a factor that should have received

significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors.

Id. at 707–08 (internal citation and quotation omitted). "Where, as here, a district court imposes a post- Booker, non-Guideline sentence . . . we conduct our reasonableness review through an abuse-of-discretion lens, paying particular attention to the specific reasons given for deviating from the Guidelines." United States v. Armendariz, 451 F.3d 352, 358 (5th Cir. 2006).

## III. ANALYSIS

A.     Notice of grounds for sentencing

Funes contends that the district court erred by failing to give him sufficient notice of the grounds for its intention to depart upward from the guidelines. See FED. R. CRIM. P. 32(h) ("Before the court may depart from the applicable sentencing range on a ground not [previously] identified for departure . . . the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.").

The record shows that Funes did, in fact, receive notice of the district court's intent to impose a variance from the sentencing guidelines. After calculating the correct Guidelines range, the district court indicated at the pre-sentencing hearing its belief that the recommended Guidelines sentencing range was inadequate, and that it would impose a variance. The government moved for an upward departure and the defendant timely responded to the motion. Therefore, Funes' sentence may not be vacated for lack of notice regarding the upward departure.[***]

---

[***] We note, however, that although Funes received adequate notice, he was, in fact, not entitled to any notice regarding the possible grounds for a variance from the sentencing guidelines. See Mejia-Huerta, 480 F.3d at 723–24. ("If we were to conclude that the advance notice requirement of Rule 32(h) applies to non-Guidelines sentences, we would re-elevate the

### B.    Improper consideration of dismissed charge

Funes asserts that the district court erred by considering his dismissed charge for sexual assault of a minor in its sentencing determination.  The guidelines explicitly prohibit consideration of a prior arrest followed by dismissed charges to support an upward departure, without further evidence that a crime was in fact committed.  See United States v. Jones (Jones I), 444 F.3d 430, 434 (5th Cir. 2006).  This is because "[a]rrests, standing alone, do not constitute reliable information" of prior criminal conduct.  Id. However, a district court may make a finding that the defendant actually committed the offense for which he was arrested; this is a proper consideration if the finding is supported by the evidence before the district court.  Jones I, 444 F.3d at 434; United States v. Jones (Jones II), __ F. 3d __, 2007 WL 1723306, at *2 (5th Cir. June 15, 2007).  Here, the district court made these findings.  At no time did Funes assent to the crimes charged.  At sentencing, however, the district court noted that, although the charges did not result in a conviction, "there have been no denials of the factual accuracy of the information set forth in the PSR, rather the defendant is only challenging it for a lack of corroboration."  The district court went on to directly state that Funes "committed the offense that led to the charges against him for sexual assault of a minor;" the district court thus found that Funes committed the crime based on the reliable indicia surrounding the charge, the indictment, and the ultimate dismissal.  "[T]he district court could have considered those facts in determining the likelihood that [Funes] would commit crimes in the future."  Jones I, 444 F.3d at 434.  The district court did not err by considering the facts that it found with regard to this offense.

---

Guidelines to a position it no longer enjoys.  Thus, we conclude that sentencing courts are not required to give pre-sentencing notice of their sua sponte intention to impose a non-Guidelines sentence, regardless of the pre-Booker pronouncements of [United States v. Burns, 501 U.S. 129 (1991)] and Rule 32(h).").

C. Failure to consider disparity

Funes asserts that the district court erred by failing to consider the sentencing disparity resulting from its choice to depart from the guidelines range. If "[t]he district court relie[s] on significant factors not accounted for by [the defendant's] Guideline range[,] . . . the imposed sentence does not produce an unwarranted disparity." Smith, 440 F.3d at 709. Here, the district court relied on a number of factors not taken into account by Funes's guideline range, including his criminal history, elements of the offense indicating a likelihood of future criminal conduct, and the risk that he would illegally reenter following deportation. The district court did not err by failing to explicitly state that it had taken sentencing disparities into account.

D. Undue weight to false documents

Funes contends that the district court erred by considering his possession of multiple documents in the name of Martinez. The district court found at sentencing that Funes's possession of the documents, including a bank credit card, "constitute[d] uncharged criminal conduct, namely identity fraud and, it appears, bank fraud." On this basis, the district court upwardly departed by eight levels.

Funes points out that the facts found by the district court would not be sufficient to sustain a conviction for the federal offenses of identity theft or credit card fraud. See 18 U.S.C. §§ 1028, 1029. The government does not contest this argument, but it contends that Funes's possession of the additional identification was consistent with the other evidence of his multiple aliases, unexplained assets, and an allegation by an ex-girlfriend of his participation in a theft ring, and generally indicated an ongoing pattern of criminal activity. Consideration of this material was not improper, since it related to the "nature and circumstances of the offense" as well as the need for the sentence "to afford adequate deterrence" and "to protect the public from further crimes," all of which

9

were cited by the district court in its explanation of why a variance would be warranted.  See 18 U.S.C. § 3553(a).

## IV. CONCLUSION

Because the district court's sentence, imposed as a variance from the sentencing guidelines, was reasonable in light of its findings and the factors listed in 18 U.S.C. § 3553(a), we AFFIRM the judgment of the district court.